HALLIE RIESENMEY, APPELLANT, v. SHAROD W. RIESENMEY, RESPONDENT.—155 S. W. (2d) 505.

Kansas City Court of Appeals.. November 3, 1941.

*Shultz & Owen* for respondent.

552

*Randolph & Randolph* for appellant.

BLAND, J.—This is a proceeding to modify that part of a divorce decree concerning an allowance for the support of a minor child of the parties. The court rendered a judgment relieving the defendant entirely of the obligation to furnish support for his child whose custody had been awarded to the plaintiff. Plaintiff has appealed.

The facts show that in January, 1935, plaintiff was granted a divorce from the defendant. The decree awarded the custody of the minor child, Dorothy Lee (then about 11 years of age) to the plaintiff, her mother, and provided that the defendant pay to plaintiff the sum of $25 per month in semi-monthly payments of $12.50 each for the support of the child. The decree provided that the defendant have the right to visit the child at all reasonable times. In April, 1935, plaintiff moved to California and took the daughter with her without consulting the court.

The parties are also the parents of a son, who is two years older than the daughter. The custody of the son was awarded to the defendant in the divorce decree.

About six months after the date of the divorce the defendant remarried. He now supports his new wife, his son, and her daughter by a former marriage.

On December 10, 1940, defendant filed a motion to modify the decree, which motion was considered and treated, at the trial, as one seeking to have a reduction or discontinuing of the award for the support for the daughter. It would appear that the court was of the opinion that plaintiff, having taken the daughter to California and thus depriving the defendant of the right to see and visit the child, had violated the terms of the decree of divorce, causing plaintiff to forfeit any rights to receive from the defendant money for the support of the child.

At the time the divorce was granted the parties owned a home and furnishings therein in St. Joseph, Missouri, which, defendant testified, was of the value of $4500. At that time defendant by quitclaim deed conveyed his interest therein to plaintiff. Plaintiff at the trial of the motion testified that she had offered the property for $1500 and could not get a buyer; that she received a net return of $18 per month as rental from the property when it was tenanted but it was, at times, vacant.

Plaintiff is now secretary to the principal of the Ventura California High School and Junior College. Her pay is $100 per month for 10 months in the year. She testified that living expenses are considerably greater in California than they are in St. Joseph.

At the time of the divorce decree defendant was earning $40 per week. His salary has been increased to $55 per week but on account of the expenses connected with the duties of his position he is receiving, in effect, practically the same salary at this time that he was being paid at the time of the divorce.

The evidence shows that the daughter is now attending the Ventura Junior College and is preparing herself for secretarial work; that the daughter is now 16 years of age; that before the return of the plaintiff for the hearing on the present motion she and her daughter had made two visits to St. Joseph; that at the time of the first visit

they remained not quite a month; that at the time of the second visit they remained about two weeks.

It appears that at the time of these visits plaintiff did not think it advisable that her daughter visit at the home of her father and so advised her but, with her consent, the child visited her father at his mother's home in St. Joseph. Defendant testified that he saw his daughter twice on each occasion that she was in St. Joseph; that during the first visit he visited with her for about three hours on the first day and for about 30 minutes on the next day; that when she visited St. Joseph the second time "My wife even called and wanted her to come over and surprise me for supper when she was in the city last time and was told she could not talk to her."

Plaintiff testified that immediately following the arrival of herself and her daughter in St. Joseph, on the two visits they made to that city since their removal to California, the latter notified defendant where she was staying, saying she would like to see him; that the father visited with the daughter at his mother's home; that she did not know whether she visited at his home or not.

The daughter testified that she always called up her father when she came to the city; that she would go to her grandmother's home and that the witness would call him up from there and "he sees me that evening. Before, my stepmother has already been along. The first time I was back she acted like she wanted to see me and the last time she made it plain I wasn't wanted it seemed to me. Q. How many times did he see you during your last visit here? A. I saw him the first evening and the next day was the Fourth of July and I didn't see him then and I can't remember whether I saw him again that time or not;" that the first time she returned to St. Joseph for a visit she got in touch with her father as soon as she arrived in the city and saw him as often as she could but that was so long ago she could not remember how many times she had visited with him. "Q. Did you make it a point to go to him and see him so you could visit with him at that time? A. Yes. That is the last time. I beg your pardon. I went to his home this last time. Q. You went to his home? A. Yes, sir. Q. Tell the court what occurred when you were there at his home. A. They were nice to me. Q. How did his wife act, his present wife? A. She acted like she liked me. Q. Was that the first time you visited here or the last? A. The last time. Q. Then after that, did he or his present wife make any effort to see you? A. I wanted to see him on the Fourth and she made it plain they were going to Kansas City. He asked me but she didn't act like she wanted me. Q. Was something said at that time by his present wife that they were filled up for the week or two ahead of time with other engagements? A. She said—that is, she made it plain—Q. (Interrupting) She made it plain to you that she did not want you around? A. It seemed to me like that. MR. OWEN: I think that is

leading and suggestive, and we object. THE COURT: Sustained. Q. Has your father correspondent with you, written your letters? A. No, he hasn't. Q. Never has carried on any correspondence with you? A. When I first went to California, the first year—I can't remember how long he wrote to me but not very long. Q. Since that first year has he written you a letter? A. No. Q. Did you answer his letters? A. Answered when he wrote to me."

Defendant testified that his son was attending Teachers' College at Maryville; that "he is on the NYA project now;" that it costs him about $20 per month to keep his son in school; that the expenses for the support of his son are at least $10 per month more now than at the time of the divorce. Defendant testified that he owed $450, which represented the balance on an automobile, which he had purchased since his divorce, together with the amount owing on the furniture in his new home. The evidence is not clear as to whether he owns the home in which he lives and there is no evidence as to its value. Defendant testified that it was impossible for him to visit his daughter in California. Defendant has promptly met the conditions of the divorce decree providing for the payment of $25 per month to the plaintiff for the support of the daughter. There is no complaint that plaintiff is not properly taking care of the child.

The decree did not provide that the daughter should be kept in this State or within the jurisdiction of the court rendering it. However, we are not now concerned with whether there has been a violation of the terms of this decree by the removal of the child to California for even, if so, the court still has jurisdiction over the question of the custody of the child and may make proper orders relative thereto. [Tatum v. Davis, 144 Mo. App. 125; Sanders v. Sanders, 14 S. W. (2d) 458, 463; Meredith v. Krauthoff, 191 Mo. App. 149; Rone v. Rone, 20 S. W. (2d) 545; State ex rel. Shoemaker v. Hall, 257 S. W. 1047; Wald v. Wald, 168 Mo. App. 377.]

The whole matter for our consideration in this proceeding is the welfare of the child and whether this requires the continuance of payments for her support. We may say, however, that it does not appear that prior to the present proceeding that the defendant ever attempted to have the order of custody modified, or make any effort, through the court or otherwise, to have the child returned to the court's jurisdiction, or to this State. Neither has the defendant evinced any great interest in the child. He did not deny that he discontinued writing her in California. There is no evidence that she or her mother returned to Missouri at his request or that he was unable to see his daughter at any time that he saw fit when she was in St. Joseph and he, himself, testified that he saw her but twice on each of the two occasions she was there.

In this proceeding the welfare of the child is solely for consideration and the court is not concerned with the difficulties of the parents.

The means of the plaintiff are not involved. [Penningroth v. Penningroth, 71 Mo. App. 438; Luplau v. Luplau, 117 S. W. (2d) 366.] The evidence that even $25 per month is not sufficient to support the child is not disputed and there is nothing in the evidence to justify the reduction of that amount awarded for the child's support in the divorce decree. Of course, support money should not have been discontinued entirely, as ordered by the lower court.

We are of the opinion that the court erred in modifying the decree. [Maxwell v. Boyd, 123 Mo. App. 334, 339; Zirkle v. Zirkle, 202 Ind. 129; Campbell v. Campbell, 37 Wisc. 206; Schneider v. Schneider, 207 Iowa, 189; Altschuler v. Altschuler, 284 N. Y. S. 93; Lancaster v. Lancaster, 29 Ill. App. 510.]

The court committed no error in failing to allow attorney's fees in an amount greater than that fixed in the contract between the plaintiff and her attorney as to his fee. However, the court should have allowed plaintiff suit money covering other expenses in defending this proceeding.

The judgment is reversed and the cause remanded. All concur.