259 S.W.2d 80 (1953)
MIDDLETON
v.
TOZER, Sheriff.
No. 28714.
St. Louis Court of Appeals. Missouri.
June 16, 1953.
Motions for Rehearing Denied July 10, 1953.
*81 Frank Mashak, St. Louis, for petitioner.
Josephus M. Todd and Louis E. Zuckerman, St. Louis, for respondent.
Motions to Set Aside Order for Rehearing or to Transfer to Supreme Court Denied July 10, 1953.
RUDDY, Judge.
This is an original proceeding in habeas corpus for release of petitioner, from the custody of the Sheriff of the City of St. Louis, Missouri. She is in his custody by virtue of an order of commitment for contempt of court issued by one of the Judges of the Circuit Court of the City of St. Louis, Missouri.
Petitioner is the mother of Dorman L. Dagley and the grandmother of Cecelia Dagley, a child of the age of eight years. Dorman L. Dagley was the husband of Lucy Ellen Dagley, now Lucy Ellen Briley, who is the mother of Cecelia Dagley. On July 19, 1946, Dorman L. Dagley obtained a divorce from his wife and by the decree he was given the custody of the child, Cecelia Dagley. The decree contained no visitation privileges for the mother.
At the time of the filing of the suit for divorce by Dorman L. Dagley and the entry of the decree he was on duty in the United States Navy, in which service he has served continuously from May 5, 1942, to the present time.
At the time of the entry of the decree of divorce the minor child of the parties was about two years of age and was in the actual custody of the maternal grandparents, Floyd Newton and Edna Newton, who lived in a small town in Missouri. The child continued in their possession and custody until on or about August 6, 1952. Since the divorce, Lucy Ellen Dagley has married twice and is now the wife of Harold Briley. Dorman L. Dagley, the father of said child, has also remarried and is now stationed at San Diego Naval Base in California. In the first week of August 1952, Dorman L. Dagley visited his mother, Maggie E. Middleton, petitioner herein, who resides in the City of St. Louis, Missouri. On August 6, 1952, while still in St. Louis, Dorman L. Dagley learned that his child, Cecelia, was not at the home of Floyd and Edna Newton, the maternal grandparents, but that she was visiting an aunt, Vergie Rayfield, at Ellington, Missouri. Dorman L. Dagley, petitioner, and a nephew of petitioner, drove to the Rayfield home at Ellington, Missouri, and there they talked to the child and brought her back to St. Louis for an alleged ten day visit. It seems that prior to the trip made on August 6, 1952, to Ellington, Missouri, the petitioner herein wrote to the Newtons at Bismarck, Missouri, and in answer to this communication she learned from the Newtons that the *82 child was with the aunt, Vergie Rayfield, at Ellington, Missouri. On August 6, 1952, after returning from Ellington, Missouri, the petitioner herein again wrote to the Newtons advising them that they had brought the child to St. Louis for a ten day visit and that the child was having a fine time and that all would do as much as possible to make the child's visit enjoyable and informed the Newtons not to worry about Cecelia. The child was not returned to either the Newtons or to Vergie Rayfield, but was removed to the State of California by the father and the child's removal was disclosed in a letter dated August 15, 1952, from San Diego, California, received by Mr. Newton, wherein the father of Cecelia informed him that he was going to keep his daughter with him for the time being, believing that it was the proper place for the child and expressing regret at the abruptness with which he had terminated the child's visit with the Newtons. He promised to write the Newtons regularly and said he would bring the child to see them. During all of the time the child lived with the Newtons, the mother of the child lived in St. Louis and would visit the child at intervals, on weekends.
On August 28, 1952, Lucy Ellen (Dagley) Briley filed a motion in the Circuit Court of the City of St. Louis to modify the decree of divorce so that said decree would place the custody and control of the child, Cecelia Dagley, in the mother. On September 6, 1952, she filed an application denominated "Defendant's Application For Citation For Contempt Of Court And For The Production Of Child In Court."
In this application, among other allegations, the mother of said child asserted:
"3) That plaintiff on or about August 5, 1952, without the authority of this Honorable Court, surreptitiously took the child from the State of Missouri and removed her to California where he has stated he intends to keep her, thereby depriving defendant of seeing such child within this state and denying the child the care, comfort, love, affection and protection of its natural mother and taking it away from the home in which it has been reared for practically all of its life. * * *
"6) That on or about August 5, 1952, the paternal grandmother, Mrs. M. E. Middleton, 4465 Forest Park Boulevard, St. Louis, in conspiracy with the plaintiff to remove said child from the State of Missouri and the jurisdiction of this Honorable Court, went to Bismarck, Missouri where the child has been living with its maternal grandparents, found the child was visiting for the weekend at Ellington, Missouri with an aunt and her small daughter, concealed the fact that her son, the plaintiff, was in the State of Missouri at that time and learning that the child was at Ellington, went to Ellington and induced Cecelia to leave the aunt's home by telling her that they were coming back to St. Louis and would drop her off at Bismarck; that plaintiff and Mrs. M. E. Middleton passed within a block of said home on the way back, but continued on through Bismarck and no word was communicated whatever to defendant and the maternal grandparents as to the whereabouts of the said child until a letter was received from the plaintiff dated August 15 and mailed from California."
Said application concluded with the following prayer:
"Wherefore, defendant prays that the plaintiff and the paternal grandmother, Mrs. M. E. Middleton, be held in contempt of Court by virtue of their illegal acts in removing said child from the jurisdiction of this Court and from the State of Missouri, and that they be compelled to produce the said child in Court, and that the Court conduct a hearing as to what is best for the welfare and well-being of said child and make its order concerning the care, custody and control thereof, and for such other and further relief as to the Court shall seem meet, just and equitable."
On the same day this application was filed, summons on said motion was ordered to issue for plaintiff to the Sheriff of San Diego, California, and a summons was ordered to issue for Mrs. M. E. Middleton to the Sheriff of the City of St. Louis, both *83 summonses returnable within thirty days after service.
On September 16, 1952, Dorman L. Dagley filed a motion denominated "Plaintiff's Motion To Modify Decree And For Permission To Remove Minor From Jurisdiction To Another State." In this motion he alleged that at the time the decree of divorce was granted, the minor child Cecelia was living with her maternal grandparents, Floyd and Edna Newton, at Ellington, Missouri, and that the child was left in their care by consent of plaintiff and the said maternal grandparents until August 6, 1952; that he is now married and that he has a comfortable home of five rooms at Imperial Beach, California, and that the best interests for the child would be served by giving plaintiff the right and authority to remove said child to the State of California. He further alleged that the said child was taken to California by him on August 6, 1952, after being advised by an attorney at law in the City of St. Louis that he had a legal right to do so. On the tenth day of October, 1952, he filed his answer to the motion of Lucy Ellen (Dagley) Briley to modify the order of custody. In his answer to said motion, among other things, he alleged certain facts that had been previously stated in his petition for divorce. No useful purpose would be served in setting out these facts in this opinion. It is enough to state they were of sufficient gravity, if true, to have warranted the court's action, at the time the decree of divorce was entered, in failing to provide visitation privileges for the mother. On this same day (October 10, 1952) he filed his answer to "Defendant's Application For Citation For Contempt Of Court And For The Production Of Child In Court." In his answer he denied that he surreptitiously took the child to the State of California and alleged again that he consulted an attorney and was advised he had a legal right to take said child to the State of California and that he was not aware that he had to obtain permission from the court before removing the child from the State of Missouri. He repeated the allegation, set out in his answer to the motion of Lucy Ellen (Dagley) Briley to modify the order of custody, that the child had been left with the maternal grandparents through an arrangement he had with them and that this arrangement, in which the mother of the child had no voice, was made because his service in the Navy at that time made his residence uncertain and he was then unable to personally care for the child. He further denied the existence of any conspiracy with his mother to take the child out of the State of Missouri.
On the same date the above mentioned answers were filed, petitioner herein filed her separate answer to the application for citation for contempt of court and in it denied that she conspired with her son to remove the child from the State of Missouri, and further alleged that she had neither the custody, nor the control of said child.
Other pleadings were filed by plaintiff and defendant in the proceedings below, the details of which are unnecessary for an understanding of the issues presented in this proceeding. On December 12, 1952, the court proceeded to hear defendant's application for citation for contempt of court and for the production of the minor child in court. A transcript of the proceedings that took place at the hearing and subsequent hearings on this application has been filed and made available for our use by consent of petitioner and respondent in this proceeding.
At the conclusion of the hearings, the court made the following order and judgment:
"The defendant's motion for citation for contempt of the plaintiff, Dorman L. Dagley, and Mrs. M. E. Middleton, for the production of Cecelia Dagley, the minor child of plaintiff and defendant, in this Court, having been heretofore heard by the Court on the 12th day of December, 1952, and on said date the Court having granted said Dorman L. Dagley and Mrs. M. E. Middleton until December 23rd, 1952, to return said minor child to the jurisdiction of this Court in order to purge themselves of said alleged contempt;
"And on the 23rd day of December, 1952, the said Dorman L. Dagley and Mrs. M. E. Middleton having failed to return said minor *84 child to the jurisdiction of this Court in accordance with its order made on said 12th day of December, 1952, on oral motion of the defendant, by her attorney, both the said Dorman L. Dagley and Mrs. M. E. Middleton having been by the Court held to be in contempt of this Court, and this cause having been by the Court passed to Monday, December 29th, 1952, for further proceedings, and now at this day it appearing to the Court that said contemnors having failed to purge themselves of said contempt;
"It is, therefore, ordered by the Court that said Dorman L. Dagley and Mrs. M. E. Middleton be committed to the City Jail of the City of St. Louis, State of Missouri, there to remain until the said Dorman L. Dagley and Mrs. Middleton comply with the order of this Court and return said Child, Cecelia Dagley, to the jurisdiction of this Court, and produce said minor child in this Court as heretofore ordered. Commitment filed."
Pursuant to said order and judgment the court issued the following commitment:
"To The Sheriff Of The City Of St. Louis, Missouri:
"Whereas, on the 23rd day of December, 1952, at our Circuit Court, City of St. Louis, Missouri, before Honorable James F. Nangle, one of the Judges of said Court, sitting in Division No. 16 thereof, Dorman L. Dagley and Mrs. M. E. Middleton were convicted of contempt of Court as more fully appears from the judgment thereof; and
"Whereas, on the 29th day of December, 1952, it appearing to our aforesaid Court that the said Dorman L. Dagley and Mrs. M. E. Middleton have failed to purge themselves of said contempt as ordered, and did consider and adjudge that said contemnors should for said contempt be punished by commitment to the Jail of the City of St. Louis, State of Missouri until they comply with the order of this Court and return Cecelia Dagley, a minor child, to the jurisdiction of this Court and produce said child in this Court, as more fully appears from the judgment thereof, and made a part of this commitment, and entered upon the record of said Court in words and figures as follows, to-wit."
Attached to said commitment was a copy of the aforementioned order and judgment. Copies of the order and judgment and commitment have been attached to the return of the respondent herein.
Many times throughout the hearing on defendant's application for citation for contempt of court and for production of child in court, the court in its remarks and colloquy with the attorneys indicated that it thought the law prohibited Dorman L. Dagley, plaintiff in the divorce action, from taking the child out of the State of Missouri without first obtaining permission of the court. The court's judgment and order of commitment must have been predicated on such an impression of the law, for the court remarked, during the hearings, "* * it is the law that they cannot take [these children] the child out of the jurisdiction of the court without an order of Court * * if he has taken the child out of the jurisdiction of the Court without a specific order of Court, * * * he will be in civil contempt * * *."
It is conceded by all the parties that the proceeding in the trial court was one for civil contempt as distinguished from criminal contempt. A civil contempt proceeding is one instituted to preserve and enforce the rights of a private party to an action and to compel obedience to a judgment or decree intended to benefit such a private party litigant. Holt v. McLaughlin, 357 Mo. 844, 210 S.W.2d 1006; State on Inf. of McKittrick v. Koon, 356 Mo. 284, 201 S.W.2d 446. It is an offense against the party in whose behalf the violated order is made, Carder v. Carder, Mo.App., 61 S. W.2d 388; 17 C.J.S., Contempt, § 6, p. 8, and is in the nature of an execution and is remedial in character. The punishment assessed is to secure to the adverse party a right which the court has awarded to her. It represents a controversy between the parties to a suit and support for this position can be found in the case of State ex rel. Chicago, Burlington & Quincy Railroad Company v. Bland, 189 Mo. 197, loc. cit. 214, 88 S.W. 28, loc. cit. 33, where the court said:

*85 "* * * if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings." (Emphasis ours.)
It follows from what we have said that a proceeding for civil contempt may only be instituted by one who has some right under a court order or decree that has been violated and needs to be protected or enforced. Do any rights flow to Lucy Ellen (Dagley) Briley from the decree entered in the divorce proceedings? It is obvious that the decree itself spells out no rights in her favor. The complete custody of the child was given to the father and the court saw fit to omit any visitation privileges. Why the court omitted any mention of visitation privileges is not disclosed in the decree, but as we have stated hereinbefore, the facts given in the petition as grounds for divorce were of sufficient gravity, if believed by the court, to have warranted the omission of visitation privileges to the mother. However, we are not concerned with the justification of the court's action in this regard, but authority for such action may be found in the case of Lamberson v. Lamberson, Mo.App., 230 S.W.2d 497, loc. cit. 500. The decree of the court having awarded the custody of the child to the father had the effect of completely divesting the mother of all right of control over the child and this is so even when visitation privileges are granted the mother. 27 C.J. S., Divorce, § 316, page 1184. Notwithstanding this, the right of custody of the child does not deprive the mother of access to her child in the absence of an express provision to the contrary. Eaton v. Eaton, Mo.App., 237 S.W. 896; Phipps v. Phipps, 168 Mo.App. 697, 154 S.W. 825; 27 C.J.S., Divorce, § 312, page 1177. The right of access spoken of in the cases, where no specific visitation privileges are present in the decree awarding custody, comes to the parent denied custody and visitation pivileges by reason of his or her parental status and is a natural right. Under no circumstances does this right of access stem from the decree itself. Where this right is denied the parent not given custody, his or her only remedy would be to apply to the court, in which the decree was granted, for an order requiring the other parent to allow right of access or visitation. It was so held in the case of Phipps v. Phipps, supra. It is our opinion that Lucy Ellen (Dagley) Briley had no rights given to her under the decree of divorce that could have been violated and, therefore, she had no basis for filing her application for citation for civil contempt.
Respondent insists that our statutes permit this decree to be modified and that the statutes permitting modification are a part of the decree. Respondent further insists that the mother of this child had the right, under the statutes, to have the provisions awarding custody modified and changed completely. There isn't any doubt about the lower court's jurisdiction to modify the original decree upon the production of proper evidence. The court may change the custody from one spouse to the other, if the welfare of the child demands it. The fact that cannot be lost sight of in this proceeding is, that the court has not modified the original decree in any respect and that the decree still stands. The mother's right to have the decree modified has not been interfered with as we shall point out later. She filed a motion asking for modification of the decree by changing the custody of the child to her, but the court saw fit not to hear this motion and instead heard the mother's application for citation for contempt.
Respondent points out that the court in its order finding petitioner guilty of civil contempt, so found, because of petitioner's failure to return the child to the jurisdiction of the court and to produce it in court, after it had ordered her and her son to return the child to the jurisdiction of the court. Respondent further reminds us that she was not found in contempt for assisting in the removal of the child from *86 the state, but because of her failure and refusal to return the child as directed. We cannot forget that this petitioner was not a party to the original divorce action and the only pleading that brought petitioner before the court below was the application for citation for contempt, wherein this petitioner was charged with conspiring with her son to remove the child from the State of Missouri. It was pursuant to the prayer in this application that summons was issued for this petitioner. We think the Court had a right to summons petitioner, even though she was not a party to the original divorce proceeding, if the application alleged facts showing a conspiracy to violate some right flowing to the applicant by virtue of the original divorce decree. All persons who interfere with the proper exercise of a court's judicial functions, whether parties or strangers, are punishable for contempt. Accordingly, one participating in the commission of acts constituting a contempt, or who conspires with others to commit such acts, is guilty of contempt. 17 C.J.S., Contempt, § 33, pages 47, 48. Certain it is, therefore, that the court would have no jurisdiction to order this petitioner to return the child to the jurisdiction of the court awarding the divorce, unless it would first find that the taking of the child out of the State of Missouri, without first obtaining permission to do so, was in violation of the original decree awarding custody and that petitioner conspired to so violate the decree. While it is true that the trial court's order of commitment was for petitioner's failure to return the child to the jurisdiction of the court, it is also very evident from the statements made by the court in the course of the hearings that the order made was based on the court's belief that the child could not be taken out of the State of Missouri without a specific order of court granting such permission. Is permission necessary, where there is no provision in the decree prohibiting the removal of the child to another state? We have found no case in this state directly ruling on this question, nor have we been referred to any such case by the parties to this proceeding. It is true that many cases in this state have held that it is against the policy of the law to permit the child to be removed into another jurisdiction and from within the province of the court first awarding the custody, unless the well-being and the future of the child would be better subserved thereby. State ex rel. Shoemaker v. Hall, Mo.Sup., 257 S.W. 1047, loc. cit. 1054; Conrad v. Conrad, Mo.App., 296 S.W. 196; Baer v. Baer, Mo.App., 51 S.W.2d 873; Lane v. Lane, Mo.App., 186 S.W.2d 47.
We do not believe that this statement is authority for holding that one who has been given complete custody of a child, in a divorce proceeding, before he may change his residence and that of his child to another state, must first obtain permission to move the child to the other state. This statement deals with the policy of the law where permission is requested and also deals with the power of the court to authorize removal when the best interest of the child will be subserved thereby. There is nothing in this statement of the law that would compel one given custody to permanently reside in this state. It could well be inferred from the circumstances surrounding Dorman L. Dagley, at the time he was awarded custody of the child, that the trial court realized that he may have to take the child out of the jurisdiction of the court. It was certainly known to the court that he was a member of the United States Navy at that time and was stationed outside the State of Missouri. The court must have contemplated, having given him custody, that in time he would arrange to have the child placed under circumstances where he would be in a position to best discharge his obligations to the child. There is some authority in this state for this statement. In the case of In re Krauthoff, 191 Mo.App. 149, loc. cit. 187, 177 S. W. 1112, loc. cit. 1125, the court said: "In the Stetson case (Stetson v. Stetson, 80 Me. 483, 15 A. 60) it is said the awarding of the custody to a parent may result in the removal of the child beyond the limits of the state in any case, since there is no authority, except in cases of crime, to prevent the parent's immediate removal to another state". (Parenthesis ours.)
*87 While we have said that we find no case in this state directly on the question of the right to remove a child out of the state without permission of the court where the decree did not provide that the child be kept in this state, we do find some hint on how our courts would have ruled had the question been before them. In the case of Rone v. Rone, Mo.App., 20 S.W.2d 545, loc. cit. 548, wherein the father of a child granted visitation privileges, with custody in the mother, charged in a motion to modify that the mother contemplated removing the child to Arkansas and thus to another jurisdiction. The court in commenting on this charge said: "It is said plaintiff contemplated removing the child to Arkansas and thus to another jurisdiction. It may be conceded that such purpose is ordinarily contrary to the policy of our law. * * * In any event, the original decree would not have prevented plaintiff from removing the child to Arkansas * * *." (Emphasis ours.)
In the case of Riesenmey v. Riesenmey, 236 Mo.App. 551, loc. cit. 553, 155 S.W.2d 505, loc. cit 506, the trial court had modified that part of a divorce decree providing for the support of a minor child. The custody of the child had been given to the mother and the mother was allowed money for support of the child. The mother moved to California with the child without consulting the court. The father sought to be relieved from the payment of the child's support, pointing out that he had been deprived of the right to see and visit the child. The trial court upheld his contention and in ruling on the trial court's action the appellate court said: "It would appear that the court was of the opinion that plaintiff, having taken the daughter to California and thus depriving the defendant of the right to see and visit the child, had violated the terms of the decree of divorce, causing plaintiff to forfeit any rights to receive from the defendant money for the support of the child. * * * The decree did not provide that the daughter should be kept in this state or within the jurisdiction of the court rendering it. However, we are not now concerned with whether there has been a violation of the terms of the decree by the removal of the child to California for even, if so, the court still has jurisdiction over the question of the custody of the child and may make proper orders relative thereto. * * We are of the opinion that the court erred in modifying the decree." (Emphasis ours.) In the case of Shreckengaust v. Shreckengaust, Mo.App., 219 S.W.2d 244, the father was awarded the custody of two children of the marriage by a court in the State of Nevada. The children were moved by the father to this state. The mother filed an original proceeding in the Kansas City Court of Appeals seeking to obtain the custody of her two children. That court in its statement of the facts pointed out that the Nevada decree did not prohibit the father from removing the children from the State of Nevada. The court remanded the children to the custody of the father and in doing so, suggested to petitioner that if in the future her rights of visitation are unduly hampered she may have the situation corrected by applying to the Nevada Court which still retains jurisdiction of the subject matter. To the same effect see the case of Tatum v. Davis, 144 Mo.App. 125, 128 S.W. 766, where the court emphasized, in commenting on the lower court's order changing custody, that the decree does not, in terms, nor by implication, direct where she should reside, or where the children should be kept in the future. In this case the mother had been given custody of the children and thereafter married and removed the children to the State of Florida.
While there is a dearth of cases in this state touching on the question posed by respondent, we are not without help from other jurisdictions where the identical question raised here has been ruled on. The cases cited below uniformly hold that where the decree remains silent as to removal of the child from the jurisdiction of the court and does not specifically prohibit the child's removal, the parent to whom the child has been awarded may lawfully take it into another state. Barnes v. Lee, 128 Or. 655, 275 P. 661; McNabb v. McNabb, 47 Cal.App.2d 623, 118 P.2d 869; Levell v. Levell, 183 Or. 39, 190 P.
*88 2d 527; Ex parte Vaughn, 205 Ala. 296, 87 So. 792; Wade v. Wade, 345 Ill.App. 170, 102 N.E.2d 356. All of the aforementioned cases except Barnes v. Lee and Levell v. Levell, involved proceedings for contempt of court. In 27 C.J.S., Divorce, § 313, page 1180, we find that "Unless the decree expressly or impliedly forbids removal, there is no violation of the order by removing the child from the state." We have held in this state that a charge of contempt cannot be established for failure to comply with uncertain orders, or judgments and that the order or judgment in order for it to form the basis of a charge of contempt must be specific and definite so as to inform the party to be bound thereby what he is to do or what he is not to do. Magel v. Gruetli Benevolent Society of St. Louis, 203 Mo.App. 335, 218 S.W. 704; Oliver v. Orrick, 220 Mo.App. 614, 288 S.W. 966; Kelly v. City of Cape Girardeau, 230 Mo.App. 137, 89 S.W.2d 693. Also see Terminal Railroad Ass'n of St. Louis v. United States, 266 U.S. 17, 45 S.Ct. 5, 69 L.Ed. 150; Albrethson v. Ensign, 32 Idaho 687, 186 P. 911.
It would have been the better course had Dorman L. Dagley applied to the court for permission to remove the child, but his failure to do so, in our opinion, constituted no violation of the decree. There was nothing in the original divorce decree that prohibited the child's removal from the state without the permission of the court granting the decree and we so rule.
We said before that the removal of this child from the state does not interfere with the right of the mother to have the original decree modified. This is her right under the statute. The record in this proceeding discloses that the mother filed such a motion and that the father has filed his answer thereto. The father has also filed a motion for permission to keep the child in California. The court is in a position to hear both motions and to decree that which serves the best interest of the child. The court having jurisdiction over the parents may proceed to adjudicate these motions and this is true even though the child is not within the jurisdiction of the court. State ex rel. Shoemaker v. Hall, Mo.Sup., 257 S.W. 1047; Drew v. Drew, Mo.App., 186 S.W.2d 858.
In view of our ruling that the mother had no rights under the decree that could have been violated and that the removal of the child from the state could under no circumstances constitute a violation of the decree as worded, petitioner stands discharged. It is so ordered.
BENNICK, P. J., and ANDERSON, J., concur.