Opinion by
Mr. Justice McWilliams.
*184 In 1955 Evelyn Margaret Grosso filed her complaint seeking a divorce from her husband, John B. Grosso, Jr. The matter was eventually tried on a non-contested basis and an interlocutory decree granted Evelyn by the court, which decree matured into a final decree of divorce. By appropriate order of court Evelyn was awarded custody of their three minor children, with liberal visitation rights granted to John Jr., who in turn was ordered to pay $22.50 per week as support for his children.
Some five years later, after countless hearings concerning contempt citations, requests for modification of custody order, enlargement of visitation rights and reduction of support orders, which hearings had exhausted some eight different attorneys and had thoroughly tested the judicial patience of more than five nisi prius judges, John Jr. had custody of the oldest child, John III, then age 17, and Evelyn had custody of their two daughters, Joyce, then age sixteen, and LeAnn, then age ten, and John Jr. was still under order of court to pay $22.50 to Evelyn for support of their two daughters. Each also had right to reasonable visitation of the children or child not in his or her custody.
On this state of their tangled family affairs John Jr. on May 4, 1960, filed a motion asking that he be given custody of the youngest child, LeAnn, and that the court reduce his support payments accordingly. Evelyn filed a written motion resisting this request and affirmatively sought an order of court cancelling John Jr.’s visitation rights to LeAnn. These motions came on for hearing on June 29, 1960, at which time the trial court heard from some seven different witnesses. John Jr. and his witnesses generally tended to downgrade Evelyn’s maternal qualities and Evelyn in turn had numerous complaints about John Jr. and his general conduct. At the conclusion of this hearing the trial court took the matter under advisement, although the judge indicated his displeasure with the manner in which John Jr. was rearing *185 John III and broadly hinted that there might well be a further hearing to determine whether John Jr. should continue to have custody of John III.
On November 21, 1960, the trial court by written order denied John Jr.’s request for custody of LeAnn, cancelled his visitation right to LeAnn, and refused to reduce the support order. By the present writ of error John Jr. seeks reversal of the judgment.
In Jensen v. Jensen, 142 Colo. 420, 351 P. (2d) 387, we said:
“We have often ruled that in custody matters the welfare of the child is paramount, and with equal frequency that in making such determination, a wide latitude is allowed to the trial court and that its determination will not be set aside except in clear cases of an abuse of discretion.”
Careful review of the present record convinces us that the trial court under the circumstances acted quite properly in denying John Jr.’s request that he be given custody of their ten year old daughter. The trial court truistically prophesied that a ten year old girl is “going to grow up to be a woman, not a man,” ergo, custody should be awarded the mother. While there are, of course, limitations to this rather broad rule of thumb, suffice it to say that the evidence adduced by John Jr. in support of his request for a change of custody is singularly unconvincing and utterly fails to show the requisite “changed circumstances” which would justify the court in granting such request. See Averch v. Averch, 104 Colo. 365, 90 P. (2d) 962.
Similarly, the trial court under the circumstances did not abuse its discretion in cancelling John Jr.’s visitation right to LeAnn. In support of the proposition that in the best interests of a minor child a trial court may deny visitation rights, see Strakosch v. Benwell, 135 Colo. 317, 310 P. (2d) 720, where it was said:
“There seems to be no question that both plaintiff and defendant have been using the child to club one another, *186 and certainly, both must shoulder a share of the blame. The child, as is usual in such cases, is caught in the middle of the conflict that seems to grow fiercer as the years go by; and certainly if some stopping point is not fixed, eventually the child’s life will be wrecked.”
The foregoing observation is equally appropriate in the instant case, where even though John Jr. and Evelyn have both remarried, neither finds that his or her second marriage has in anywise interfered with their insatiable desire to prolong the bitter breakup of their marriage with neverending litigation. “If a stopping point is not fixed, eventually (LeAnn’s) life will be wrecked.” The determination by the trial court that John Jr.’s right to visit LeAnn should for the time being, at least, be cancelled and suspended was neither arbitrary nor capricious, and should stand.
John Jr.’s request for a reduction in support money was apparently premised on the assumption that he would be given custody of LeAnn. Since he was not given custody of LeAnn, and did not offer any testimony to show changed circumstances, the trial court quite properly denied his request in this regard. The suggestion advanced for the first time in this Court that because John Jr. now has no visitation right to LeAnn he should therefore be relieved of the duty to support is also without merit.
It is finally suggested by present counsel for John Jr., who incidentally did not represent him at the hearing in the trial court, that the trial court “erred in failing to set for further hearing the question before it, after having so ordered.” At the conclusion of the hearing of June 29, 1960, the trial court did indicate that if it felt the need therefor, there “may be another hearing on it” and strongly indicated that there would be a hearing concerning the custody of John III. However, the fact that the trial court held no further hearing as to LeAnn did not constitute error. The record indicates that on June 29, 1960, John Jr. put on his entire case *187 and made no request for any further hearing in connection with his motion. The suggestion that John Jr. has somehow been deprived of “his day in court” is completely unwarranted. Quite the contrary is true, as his broken marriage and the legal problems resulting therefrom have resulted in protracted litigation virtually requiring the services of a full-time judge.
The judgment is affirmed.
Mr. Justice Sutton and Mr. Justice Pringle concur.