M_____ L_____ B_____,
**Plaintiff-Respondent,**

v.

W_____ R_____ B_____,
**Defendant-Appellant.**

**No. 8924.**

Springfield Court of Appeals,
Missouri.

Aug. 7, 1970.

Joe Welborn, Bloomfield, for defendant-appellant.

Blanton, Blanton & Rice, James D. Sickal, Sikeston, for plaintiff-respondent.

STONE, Judge.

In this suit by M—— L—— B——, plaintiff wife and mother, against W—— R—— B——, defendant husband and father, plaintiff sought and was granted a divorce and custody of the two sons, now ten and five years of age, born to the parties. The sole cause of divorce alleged in plaintiff's petition was defendant's conviction of a felony during the marriage [V.A.M.S. § 452.010], namely, his conviction on a charge of "bank robbery" or "armed robbery" on June 10, 1968, for which he had been sentenced to serve a term of fourteen years and, at the time of trial of the divorce suit, was confined in the Missouri State Penitentiary. The only bone of appellate contention is as to whether or not the court should have ordered in the decree, as he did, "that said minor children not be allowed visitation rights with the defendant [father] while and so long as [he] is in confinement at the Department of Corrections."

The only witnesses at the brief hearing in the divorce case were plaintiff mother and her two character witnesses. During the mother's examination, it was disclosed that, while defendant father had been confined in the penitentiary, "once a month or so his brothers" had taken the two children, accompanied by their mother, "to Jefferson City to see him," and the mother declared her willingness "that they can continue to take the boys up there one weekend a month . . . providing they're agreeable with me in every way." The trial judge immediately "question[ed] the

wisdom of that . . . of their going up there," which prompted this statement by the mother's counsel: "To make the plaintiff's position clear, we would not object to any reasonable visitation. In other words, she's not trying to keep the children away from the father . . . ."

Literally construed, the above-quoted language of the decretal prohibition does not, in terms, deny *to the father* the right of access to or visitation with his children but rather denies *to the children* "visitation rights" with their father only so long as he remains in penal confinement, thus suggesting that the primary and motivating consideration in entry of the order was *the place of visitation.* However, the obvious effect of the quoted prohibition is to deny to the father any access to or visitation with his children for an extended period of time, and we shall treat of the matter on that basis.

■ The effect of the father's sentence to imprisonment for a term less than life was to suspend all of his *civil rights* during such term. V.A.M.S. § 222.010. But civil rights are to be distinguished from *natural rights,* which "are such as appertain originally and essentially to man— such as are inherent in his nature, and which he enjoys as a man, independent of any particular act on his side." 14 C.J.S. Civil Rights § 2, p. 1160. See In re Gogabashvele's Estate, 195 Cal.App.2d 503, 16 Cal.Rptr. 77, 91(9); Borden v. State, 11 Ark. 519, 527. A parent's right of access to or visitation with his minor children is a natural right,[1] sometimes regarded as sacred [Block v. Block, 15 Wis. 2d 291, 112 N.W.2d 923, 927] and always respected as exceedingly important. Radford v. Matczuk, 223 Md. 483, 164 A.2d 904, 907, 88 A.L.R.2d 140, 144; Paine v. Paine, D.C.App., 201 A.2d 20, 22; 2 Nelson, Divorce and Annulment (2nd Ed.), § 15.26, pp. 274–275. Of course, this parental right of access is not an absolute one [Raible v. Raible, 242 Md. 586, 219 A.2d 777, 782(10); Martin v. Martin, 27 Wash.2d 308, 178 P.2d 284, 286; 2 Nelson, Divorce and Annulment (2nd Ed.) § 15.26, l. c. 275] and will be denied where the court is convinced that such access would be detrimental to the children's welfare,[2] for that is the overriding judicial concern in this as in all other matters pertaining to the care and custody of minors. However, the discussions of this subject are sprinkled with earnest exhortations that a complete denial of the parental right of access should be decreed only in extraordinary and exceptional circumstances[3] and upon clear and convincing evidence.[4]

■ We find numerous statements in our Missouri cases to the effect that, "where neither parent is unfit," the best interests of minor children usually are served by an arrangement which will en-

---

1. Middleton v. Tozer, Mo.App., 259 S.W. 2d 80, 85(4); In re McMenamin, Okl., 310 P.2d 381, 383(2); Radford v. Matczuk, 223 Md. 483, 164 A.2d 904, 907, 88 A.L.R.2d 140, 144; In re Two Minor Children, 3 Storey 565, 53 Del. 565, 173 A.2d 876, 879(2); Paine v. Paine, D.C. App., 201 A.2d 20, 22; Block v. Block, 15 Wis.2d 291, 112 N.W.2d 923, 927; 2 Nelson, Divorce and Annulment (2nd Ed.) § 15.26, pp. 274–275; 24 Am.Jur. 2d Divorce and Separation § 801, l. c. 911.

2. For examples of such situations, see Lamberson v. Lamberson, Mo.App., 230 S.W.2d 497, 500(4); Grosso v. Grosso, 149 Colo. 183, 368 P.2d 561(1); In re Two Minor Children, supra note 1, 173 A.

2d at 879(4–6); Paine v. Paine, supra note 1.

3. Bradford v. Bradford, Okl., 327 P.2d 684, 686(3); Syas v. Syas, 150 Neb. 533, 34 N.W.2d 884, 886(3); Wilson v. Wilson, 73 Idaho 326, 252 P.2d 197, 198(1); McLemore v. McLemore, Tex.Civ.App., 285 S.W. 693, 694(3); annotation 88 A.L.R. 2d 148, 160 [§ 3c]; 2 Nelson, op. cit. supra, § 15.26, l. c. 275; 24 Am.Jur.2d Divorce and Separation § 801, l. c. 911.

4. Leonard v. Leonard, 173 Pa.Super. 424, 98 A.2d 638, 639(2); Radford v. Matczuk, supra note 2, 164 A.2d at 908, 88 A.L.R.2d at 145; In re McMenamin, supra note 2, 310 P.2d at 383(2); Schlarb v. Schlarb, 168 Iowa 364, 150 N.W. 593, 596(6).

able their association with both parents. M—— L—— v. M—— R——, Mo.App., 407 S.W.2d 600, 604(8), and cases there collected; P—— D—— v. C—— S——, Mo.App., 394 S.W.2d 437, 445(9). But a parent may not be "unfit" to be accorded his natural right of visitation with his children even though he has been "the guilty party" in the divorce suit [Phipps v. Phipps, 168 Mo.App. 697, 699, 154 S.W. 825, 826(1)] and has been found "unfit" to have custody of such children. See I—— v. B——, Mo.App., 305 S.W.2d 713, where the mother was unfit to have custody [l. c. 718(1)] but was granted visitation rights at the home of the maternal grandparents [l. c. 721(12)], and Shepard v. Shepard, Mo.App., 194 S.W.2d 319, where the judgment of the trial court finding that the mother was not a fit person to have custody of her daughter six years of age, that the father could not give the daughter a proper home, and that she should be committed to an institutional home [l. c. 322] was affirmed but it was declared the trial court had erred in not granting both mother and father visitation rights at reasonable times [l. c. 328(12, 13)]. Elsewhere it has been held (soundly, we think) that neither past delinquency [24 Am.Jur.2d Divorce and Separation § 802, p. 912—see Smith v. Smith, 61 Ariz. 373, 149 P.2d 683(2, 3); Kennard v. Kennard, 87 N.H. 320, 179 A. 414, 417–418(1)], nor former conviction and confinement [Radford v. Matczuk, 223 Md. 483, 164 A.2d 904, 88 A.L.R.2d 140], nor present incarceration [Chadwick v. Chadwick, 275 Mich. 226, 266 N.W. 331] necessarily requires denial of the errant parent's right of access to his children.

■ Although there was no such contention in the trial court, the mother here asserts that "[the father] has rendered himself unfit by virtue or his being convicted and sentenced to imprisonment for a crime involving moral turpitude." This prompts the observation that "[n]otwithstanding defendant's present incarceration, as the result of a criminal conviction, the law does not preclude repentance, reformation, and forgiveness." Chadwick v. Chadwick, supra, 266 N.W. at 332. But that aside, the mother does not seriously press her quoted charge of the father's unfitness to have access to his children, for she immediately concedes that "the concern . . . is not so much the question of the [father's] fitness, but rather the environmental circumstances under which any visitation would of necessity have to take place" in that "the children would be forced to confront their father in the abnormal surroundings of prison life, including guards, uniforms, bars, etc." Thus, the mother *now* professes "concern" only about *the place of visitation,* which, as we observed preliminarily, appears from the language of the decretal prohibition to have been the primary and motivating consideration therefor. On the abbreviated record presented to us, we are unable to subscribe to the view, unsupported by any evidence adduced or authority cited, that the father should be, for an extended period of time, absolutely foreclosed from any access to or visitation with his children by *the sole circumstance* that his confinement necessitates any such access or visitation in a penal institution.

Accordingly, the cause is remanded to the circuit court with directions to modify the decree entered in this cause on March 17, 1969, by striking and deleting therefrom the following sentence: "It is further considered, ordered and adjudged by the court that said minor children not be allowed visitation rights with the defendant while and so long as the defendant is in confinement at the Department of Corrections." Since the quoted decretal prohibition was not sought by plaintiff mother and is being stricken and deleted at defendant father's request, costs on appeal are taxed against him.

TITUS, P. J., and HOGAN, J., concur.