LORRAINE M. MILLS *vs.* HAROLD J. MILLS.

Worcester.    June 9, 1975. — April 30, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Contempt.   Divorce,* Decree, Contempt proceeding.   *Practice, Civil,* Contempt proceeding.   *Sale,* What constitutes.

The plaintiff had standing to bring a contempt petition against her former husband for his failure to comply with the terms of a divorce decree which provided for payment of a certain sum to their chil-

---

dren upon sale of his real estate, even though the children were no
longer minors when the real estate was sold. [275-277]

In a contempt proceeding to enforce a stipulation in a divorce decree
that the husband pay his children certain of the proceeds upon sale
of his real estate, findings that he transferred the property to him-
self and his second wife as tenants by the entirety and that he in-
tended to give his second wife her interest as a gift did not support
an order that he pay the stipulated amount to his children. [277-
278]

In a contempt proceeding by a party to a divorce decree against her
former husband for failure to comply with a stipulation in the de-
cree, where evidence did not warrant a finding that he was in con-
tempt on the ground claimed by the plaintiff but indicated that he
may have been in contempt on other grounds, this court granted the
.plaintiff leave to amend her petition. [278-279]

LIBEL for divorce filed in the Probate Court for the
county of Worcester on May 8, 1964.

A contempt petition filed on June 18, 1974, was heard
by *Conlin, J.*

*Darragh K. Kasakoff* for the defendant.

GOODMAN, J.   This is an appeal from a decree entered
September 6, 1974, adjudging the defendant in contempt
of a divorce decree entered February 10, 1966, and order-
ing that he pay the sum of $7,000 to his two children[1]
pursuant to a stipulation which had been "incorporated
into and made a part of this [divorce] decree." The stipu-
lation provides in paragraph 8 "[t]hat the libellant [plain-
tiff] shall convey all her right, title and interest to [cer-
tain] real estate ... to the libellee [defendant] ... and that
in the event of the sale of said real estate by the said
libellee ... the libellee shall pay the children of the parties
hereto, one-half of the proceeds thereof, but not less than
Seven Thousand (7000) Dollars ....."[2]

---

[1] The decree provided for payment within 90 days; it was stayed
pending appeal.

[2] Other parts of the stipulation dealing with the real estate are:
"9. The libellee shall not mortgage the real estate for a sum greater
than Five Thousand (5000) Dollars.
"10. In the event of the libellee's death or in the event ... the said

Mills *v.* Mills.

Subsequent to the divorce decree the defendant remarried and by deed dated January 16, 1974, transferred the real estate to himself and his second wife as tenants by the entirety. The defendant testified (the evidence is reported) that his second wife did not give "any money or anything of value" for the transfer, and the trial judge found that the defendant "intended to give his wife her interest as a gift." The defendant argues primarily (1) that the plaintiff had no standing to bring the petition because the children had reached their majority[3] and (2) that in any event there was no violation of the stipulation in the decree because the transfer was not a sale.

1. The defendant's argument that the plaintiff has no standing to bring contempt proceedings because the divorce decree requires payments to her adult children rather than to her misconceives her status in relation to that decree. The contempt proceedings were "an incident of the principal suit [the divorce action]." *New England Overall Co. Inc.* v. *Woltmann,* 343 Mass. 69, 80 (1961). *Parker* v. *United States,* 153 F. 2d 66, 70 (1st Cir. 1946). ("Proceedings in civil contempt are between the original

premises are unoccupied by the libellee, then the premises shall be sold and distribution to be made as hereinabove stated."

The stipulation also provided:

"1. The libellant hereby waives all alimony, past, present and future . . ..

"4. The libellee shall pay to the libellant the sum of Forty Dollars . . . a week . . . together with all reasonable dental and medical bills incurred on behalf of said children, the foregoing payments to be for the support and care of said children."

[3] The children were no longer minors when the transfer occurred and the petition was brought. We accept the assumptions implicit in the defendant's position that pars. 8-10 of the stipulation were also intended to apply after the children reached their majority. Therefore we need not (nor have we been asked to) concern ourselves with the problems discussed in The New Age of Majority and Support Orders, 59 Mass. L.Q. 271. The Probate Court clearly had jurisdiction to deal with the real estate. *MacLennan* v. *MacLennan,* 311 Mass. 709, 712-713 (1942). The propriety of the divorce decree, which includes the stipulation, is not open. *State Realty Co. of Boston, Inc.* v. *MacNeil,* 341 Mass. 123, 124 (1960). See *Goldstein* v. *Goldstein,* 350 Mass. 762 (1966).

parties and are instituted and tried as a part of the main cause.") As a party to the divorce decree she acquired whatever rights the decree created against her husband. Among them was the right to have the payment made as stipulated; and it is her right in this respect which she claims was violated and seeks to enforce. Such enforcement is the precise function of a civil contempt proceeding. "[T]he real purpose of the court order is purely remedial — to coerce obedience to a decree passed in complainant's favor, or to compensate complainant for loss caused by respondent's disobedience of such a decree." *Parker* v. *United States, supra.* See *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.* 361 Mass. 35, 36 (1972) ("[The plaintiff] attempt[s] merely to obtain the benefit of the [divorce decree]").

Here the plaintiff is not deprived of standing because she seeks enforcement of the divorce decree rather than compensation for the violation. See *Perry* v. *Perry,* 329 Mass. 771 (1953). Nor did she become "disentitled," as the defendant argues, when the children became adults. The decree was obviously intended to remain in effect indefinitely, until payments were required upon the defendant's sale of the property or upon his death. It thus contemplated the possibility (perhaps probability) that the children would be adults when paragraphs 8 and 10 of the stipulation became applicable.

We have found no authority directly in point, and the cases cited by the defendant are unpersuasive.[4] (Cases on the general subject are collected in anno. 61 A.L.R. 2d

---

[4] In *Middleton* v. *Tozer,* 259 S.W. 2d 80 (Mo. App. 1953), the court held that a petitioner for habeas corpus was wrongfully imprisoned for contempt because a decree permitted what she had done. The party who brought the contempt proceeding that resulted in the imprisonment "had no rights given to her under the decree of divorce that could have been violated. . . ." P. 85. In *Stoutenburg* v. *Stoutenburg,* 285 Mich. 505 (1938), the court held that a petition for contempt would not lie for failure of a father to make payments for child support where the decree required that such payments be made to a guardian who was never appointed. In the *Stoutenburg* case, as in the *Middleton* case, the provisions for support were simply not violated.

1083, 1094-1098 [1958].) However, in *Tisdell* v. *Tisdell,* 363 P. 2d 277 (Okla. 1961) a mother was held to have standing to bring a contempt petition against her former husband for noncompliance with a child support order notwithstanding the fact that the payments were to be made to a guardian and not to the mother. The court observed "[t]he plaintiff cannot be assumed to have lost her interest in her daughter. . . ." P. 280. Compare *Savell* v. *Savell,* 213 Miss. 869 (1952).

An obvious analogy to the stipulation in the divorce decree is the third-party beneficiary contract. Whatever the standing of a child to enforce provisions in a contract made for its benefit (see *Green* v. *Green,* 298 Mass. 19, 22-23 [1937]), it is clear that a party to such a contract may enforce it. *Bettencourt* v. *Bettencourt,* 362 Mass. 1, 10-11 (1972). Corbin, Contracts, §§ 826, 1154 (1951). See Mass.R.Dom.Rel.P. 17(a) (effective July 1, 1975). We see no reason for a distinction between the standing of a party to a contract which the court enforces because a bargain has been negotiated and the standing of a party to a decree which the court enforces because the decree represents the court's resolution of a controversy between the parties.

2. We agree with the defendant that his transfer of the real estate to himself and his wife, as tenants by the entirety, was not a sale. The trial judge found that the defendant "intended to give his wife her interest as a gift" and thus indicated his belief in the defendant's testimony that the defendant received no money or anything of value. See *E. I. duPont deNemours & Co., Inc.* v. *Kaufman & Chernick, Inc.* 337 Mass. 216, 219-220 (1958). The recitation in the deed that the consideration for the conveyance was "such that no documentary stamps are required, it being less than one hundred dollars" is not inconsistent with a gift. Further, the defendant's testimony is competent to show that no consideration actually passed. "[A] grantor is not absolutely bound by the consideration or the acknowledgement of its payment expressed in his deed, and . . . the true consideration may be shown by pa-

rol or other evidence." *McRae* v. *Pope,* 311 Mass. 500, 504 (1942). *Cardinal* v. *Hadley,* 158 Mass. 352, 354 (1893). We therefore see no justification under paragraph 8 of the stipulation for an order that the defendant pay $7,000 to the children.

3. This is not to say that the defendant may not be guilty of contempt in making the present transfer. On this record the transfer is clearly (*Coyne Industrial Laundry of Schenectady, Inc.* v. *Gould,* 359 Mass. 269, 275-276 [1971]) in derogation of paragraph 10 of the stipulation which provides that upon the defendant's death the property is to be sold and one-half the proceeds (but not less than $7,000) distributed to the children. Indeed, the defendant testified: "I figured that my wife would inherit my share of the house." Moreover, the decree enumerates the types of disposition which are permitted (see fn. 2 and the text to which it is appended). On its face we would construe the decree to exclude any other disposition such as the transfer in this case. See *Horvitz* v. *Zalkind,* 332 Mass. 125, 128 (1954). Cf. *Hamlen* v. *Rednalloh Co.* 291 Mass. 119, 123 (1935).

However, the only contempt which has been charged is the failure to pay at least $7,000 upon a sale as provided in paragraph 8 of the stipulation. Charges of other violations can be considered on this petition only if it is amended to include such charges and the defendant is given an opportunity to defend against them. *Crystal, petitioner,* 330 Mass. 583, 588-589 (1953). *Nickerson* v. *Dowd,* 342 Mass. 462, 472 (1961). *Meranto* v. *Meranto,* 366 Mass. 720, 724 (1975). We deem it appropriate to point out that the trial judge in contempt proceedings has broad discretion to fashion remedies (*Blackenburg* v. *Commonwealth,* 260 Mass. 369, 373 [1927]; *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.* 361 Mass. at 38, fn. 3) in order to secure the plaintiff against threats to the integrity of the decree although they may not as yet have succeeded. *NLRB* v. *American Mfg. Co.* 132 F. 2d 740, 742 (5th Cir. 1943). *United States* v. *Gamewell Co.* 95

F. Supp. 9, 13 (D. Mass. 1951). See *Scola* v. *Scola,* 318 Mass. 9, 11 (1945).

Accordingly, the judgment is reversed and the case is remanded to the Probate Court. *Nickerson* v. *Dowd, supra. United States Time Corp.* v. *G.E.M. of Boston, Inc.* 345 Mass. 279, 283 (1963). If the plaintiff moves within sixty days after the date of this opinion (or within thirty days after the denial of any application for further appellate review) to amend the petition in accordance with part 3 of this opinion such motion is to be allowed and the matter is to stand for further proceedings in accordance therewith. If no such motion is filed (a petition for further appellate review not having been allowed) the petition is to be dismissed.

*So ordered.*