[No. D015361. Fourth Dist., Div. One. Dec. 20, 1993.]

In re the Marriage of DAPHNE F. SMITH and DONALD R. MAESCHER.
DAPHNE F. SMITH, Respondent, v.
DONALD R. MAESCHER, Appellant.

**COUNSEL**

Michael C. Shea and Karen Dean-Smith for Appellant.

Dennis Kershek and E. Stephen Temko for Respondent.

**OPINION**

**WORK, J.**—Donald Maescher appeals an order requiring him to reimburse his former wife, Daphne Smith, for education expenses she advanced to their son Peter for his senior year of college. He contends their marital separation agreement defining his obligation to pay college expenses created a third party beneficiary contract for the breach of which only Peter could recover damages. He also contends he and Peter orally modified his obligation to pay college expenses, so he is not liable for their payment.[1] Finally, he asserts the court erred in awarding Smith $1,000 in attorney fees. Because we conclude the law of third party beneficiary contracts gives a promisee only a remedy of specific performance and, at best, nominal damages in a case such as this involving a donee beneficiary, the court erred in awarding Smith the moneys voluntarily loaned Peter. As a result, it also erred in awarding attorney fees to Smith.

Smith cross-appeals the order to the extent it denied her claim for child support payments for Peter and their other son, Christopher, during the periods they were over age 18 and attending college. Since we conclude substantial evidence supports the court's implicit finding the marital separation agreement did not require such payments and the obligation for "support" during Peter's college days was encompassed by the terms of a separate paragraph in the marital agreement, we affirm this portion of the order.

I

When Massachusetts residents, Maescher and Smith, entered into a marital separation agreement in 1976 after almost eleven years of marriage, they had two minor sons, Peter and Christopher, aged seven and five, respectively. Their agreement expressly provided that Massachusetts law would govern it and its construction. The Massachusetts judgment of divorce incorporated the agreement by reference, including a provision for child support payments, as follows:

"*VI. Alimony and Support*: The Husband [Maescher] agrees to pay to the Wife [Smith] the following amounts:

---

[1]Because we resolve this case on other grounds, we do not address this contention.

"

 .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"B. So long as a child is entitled to support from the Husband . . . , the sum of Thirty-One and 25/100 ($31.25) per child on the first and fifteenth of every month.

"

 .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"D. A child shall be entitled to support from the Husband until the first to occur of

"(1) the death of such child;

"(2) *the child attaining the age of eighteen and not attending high school or attending college*;

"(3) the marriage of the child[.]" (Italics added.)[2]

The agreement provided for payment by Maescher of the children's college education expenses: "*IX.—Education*: The Husband agrees, provided that he is financially capable to do so, to provide for the undergraduate college education of both children at an accredited institution of higher learning. The selection of such college shall be made with the Husband's consent, which shall not be unreasonably withheld."

Peter enrolled at Syracuse University in 1986 and Maescher paid his expenses for room, board, books, and tuition for the first three years. However, after becoming concerned with Peter's poor academic performance, Maescher told him he would initially pay only his room and incidental expenses for his senior year and would reimburse him for his tuition and other expenses only if he attained a "B" average his senior year.[3] Maescher told Peter he would have to obtain alternative financing and suggested a student loan. After Peter was denied financial assistance by the university, Smith personally loaned him the remaining money necessary to pay his tuition and other expenses for his senior year. (Smith declared Peter also "was forced to obtain a job." The amount of money he earned is not shown.)

Although Peter was short of sufficient credits to graduate (a situation of which Maescher apparently was unaware), Syracuse University allowed him to participate in graduation ceremonies in May 1990, even though he

---

[2]The amount of child support payable by Maescher was periodically increased over the following years under the terms of the agreement and through modified judgments.

[3]By letter dated July 10, 1989, Maescher advised Smith of his intent, and that Peter would have to obtain a student loan or rely on the "largesse of his mother."

received passing grades in only three of the eleven classes he entered during his senior year. He failed the only class he attended of the six he signed up for that spring semester, and Maescher then presented a gift of $10,000 to Peter which he suggested be used to repay Smith for her loan to him. Smith refused the money when offered by Peter, and she suggested he use it for other purposes.

Also, Maescher stopped making child support payments to Smith after Peter turned 18 years old and had completed high school. As a result, Smith caused the District Attorney of San Diego County on July 7, 1987, to bring a Revised Uniform Reciprocal Enforcement of Support Act action (Code Civ. Proc., § 1650 et seq.) on her behalf for alleged arrearages in child support for Peter. The court denied this claim without prejudice. Later, Maescher also stopped paying child support to Smith for Christopher after he turned 18 and finished high school.

On January 9, 1991, Smith filed a complaint to enforce the separation agreement and recover $11,109 for amounts she advanced to Peter for his senior year of college and alleged arrearages in child support in excess of $28,000 for Peter and Christopher. After considering memoranda, declarations, and other documents and hearing oral arguments, the court denied Smith's claim for child support arrearages, but granted her request for $11,109 in college expenses advanced to Peter, along with $1,000 in attorney fees.

## II

We first address Maescher's contention that the court erred in awarding Smith $11,109 for the money she loaned to Peter for his senior year of college. The court relied upon the language of the separation agreement in awarding these damages to Smith. The parties agree the separation agreement made Peter an intended third party beneficiary as to college expenses. The pivotal issue in this dispute is whether Smith may maintain a damage action for breach of the third party beneficiary contract.

Maescher contends only Peter may enforce the contract. Although he correctly states intended third party beneficiaries may enforce contracts, he cites no authority that *only* third party beneficiaries may enforce the contract. Rather, it is clear the promisee also has a right to enforce the contract. As Smith notes, the court in *Walsh* v. *Walsh* (1940) 42 Cal.App.2d 282, 285-286 [108 P.2d 760], stated: "[A] child [i.e., intended third party beneficiary] can enforce the provisions of a property settlement agreement made for his benefit in the same manner as could a party to the agreement." (See also,

*Reliance Life Ins. Co.* v. *Jaffe* (1953) 121 Cal.App.2d 241, 244 [263 P.2d 82]; *Mutual Life Ins. Co.* v. *Henes* (1935) 8 Cal.App.2d 306, 311 [47 P.2d 513].) Since Massachusetts law governs the agreement, we look particularly to generally accepted contract principles and Massachusetts case law. The Restatement Second of Contracts acknowledges the right of a promisee to at least one form of remedy (i.e., specific performance), stating: "Where specific performance is otherwise an appropriate remedy, either the promisee or the beneficiary may maintain a suit for specific enforcement of a duty owed to an intended beneficiary." (Rest.2d Contracts, § 307.) It goes on to comment that, "Even though a contract creates a duty to a beneficiary, the promisee has a right to performance." (Rest.2d Contracts, § 307, com. b.) Maescher cites no Massachusetts cases, and we find none, which preclude a promisee from enforcing a third party beneficiary contract. To the contrary, Massachusetts case law appears to fully support a promisee's right to enforce the contract. As one Massachusetts court stated: "Whatever the standing of a child to enforce provisions in a contract made for its benefit [citation], it is clear that a party to such a contract may enforce it." (*Mills* v. *Mills* (1976) 4 Mass.App. 273 [345 N.E.2d 915, 918].) Further, third party beneficiaries are not indispensable parties to a promisee's action to enforce the contract. (*Swift* v. *Swift* (1979) 8 Mass.App. 273 [391 N.E.2d 930, 931-932].) Thus, we conclude Smith, as a promisee, has a right to enforce Maescher's promise to pay for Peter's college education.

However, the trial court apparently jumped from this premise to conclude Smith was entitled to bring an action for damages. Whether she may recover damages depends on whether Peter was an intended "creditor" or "donee" beneficiary. ▆ The former type of beneficiary receives payment from the promisor of a debt or other obligation owed the beneficiary by the promisee, whereas the latter type does not and essentially receives a "gift" in the form of the promisor's obligation to it. (Rest.2d Contracts, § 302, com. b & com. c.) If a promisor does not pay the promisee's debt to the creditor beneficiary, then the promisee will remain liable to the beneficiary for the full amount of the debt and could directly suffer damages in this full amount. In contrast, if the promisor does not perform its obligation to the donee beneficiary, the promisee will not be liable to the beneficiary for such performance and presumably will suffer only nominal damages. In both cases, however, as we noted above, the promisee may have a right to enforce the contract by obtaining specific performance against the promisor. As the Restatement Second of Contracts, section 305, comment a, states: "The promisee of a promise for the benefit of a beneficiary has the same right to performance as any other promisee, whether the promise is binding because part of a bargain, because of his reliance, or because of its formal characteristics. If the promisee has no economic interest in the performance, as in

many cases involving gift promises, the ordinary remedy of damages for breach of contract is an inadequate remedy, since only nominal damages can be recovered. In such cases specific performance is commonly appropriate. See § 307. In the ordinary case of a promise to pay the promisee's debt, on the other hand, the promisee may suffer substantial damages as a result of breach by the promisor. So long as there is no conflict with rights of the beneficiary or the promisor, he is entitled to recover such damages. See § 310." A promisee cannot recover damages which may be suffered by the intended third party beneficiary, although the promisee may sue for specific performance of the promisor's obligation. (Rest.2d Contracts, § 307, com. b.) The Restatement Second of Contracts, section 307, comment d, is even more specific as to donee beneficiary situations, stating: "Where the promisee intends to make a gift of the promised performance to the beneficiary, the beneficiary ordinarily has an economic interest in the performance but the promisee does not. Thus the promisee may suffer no damages as the result of breach by the promisor. In such cases the promisee's remedy in damages is not an adequate remedy . . . , and specific performance may be appropriate. . . . The court may of course so fashion its decree as to protect the interests of the promisee and beneficiary without unnecessary injury to the promisor or innocent third persons. See § 358." Illustration 2 to section 307 of the Restatement Second of Contracts is informative: "As part of a separation agreement B promises his wife A not to change the provision in B's will for C, their son. A dies and B changes his will to C's detriment, adding also a provision that C will forfeit any bequest if he questions the change before any tribunal. A's personal representative may sue for specific performance of B's promise." We infer from the above illustration that the promisee (i.e., A or A's personal representative) has no cause of action for breach of contract damages. Neither California nor Massachusetts case law appears to have dealt with these specific issues, so we adopt and apply the principles set forth in the Restatement Second of Contracts.

▊ The record contains no evidence supporting a conclusion Smith had a legal obligation to pay Peter's college expenses if Maescher did not.[4] In her appellate brief, Smith cites a form of Massachusetts statute which was

---

[4]Smith contends Maescher cannot raise the issue of Peter as a donee beneficiary for the first time on appeal. However, in light of our discussion below, the record is clear that Peter is a donee beneficiary, and, as a result, Maescher's arguments and our analysis are solely issues of law which we may address for the first time on appeal. In any event, we conclude the trial court was aware of these issues in general, based on its following statement: "As an aside, I also point out similar to how do you define the education costs. That the agreement is drafted that I agree to pay. Does not say he agrees to pay to mother. Does not say he agrees to pay to the child. It doesn't say he agrees to pay to the school. It's a term of payment. It's an enforceability and who's really got the ability to enforce it. But I'm assuming for the sake of arriving at decisions, that mother was a party to the agreement. That she had that right."

amended after the date of the separation agreement to allow a Massachusetts court to make an order of "maintenance, support and education" of certain children who are over 18, but under 21 years of age. (Mass. Gen. Laws Ann., ch. 208, § 28.)[5] However, even if this law were in effect at the time of the separation agreement or judgment of divorce, there is nothing in the statute or in the judgment of divorce requiring Smith to pay for Peter's college education expenses, nor, for that matter, any maintenance after he became 18. Nor do they require Maescher to pay such expenses, except for the specific contractual language of the separation agreement incorporated into the judgment of divorce. Thus, while Maescher's obligation to pay Peter's college expenses arises out of the separation agreement, Smith has no legal obligation to pay such expenses. Accordingly, if Maescher were to fail to pay Peter's college expenses, Peter would have no legal recourse against Smith for payment. Thus, Peter is clearly a donee beneficiary and had a direct cause of action against Maescher for violation of that provision.

The record lacks evidence showing Smith incurred legal damages by Maescher's presumed breach of the separation agreement. Certainly, the record shows she loaned Peter the remaining money (i.e., $11,109) necessary to attend his senior year of college, but she *voluntarily* made that loan without any legal obligation to do so. She has not claimed Peter assigned her his rights against Maescher. Thus, Smith has no right to collect the loaned money from Maescher.[6] Since Peter is not a party to this action, the court had no legal authority to award Smith $11,109 in damages against Maescher. As a result, we reverse this portion of the order.[7]

### III

We now address Smith's cross-appeal challenging the court's denial of child support payments to her for Peter and Christopher when they were in college and over age 18. She contends the court erred in interpreting the separation agreement under California law rather than Massachusetts law. She appears to concede that the relevant language in the separation agreement was ambiguous, although she contends the court erred in resolving the

---

[5]As *Smith concedes, the relevant part of that statute was amended in late 1976 to read as follows:* "The court may make appropriate orders of maintenance, support *and education* of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance." (Italics added.)

[6]One who voluntarily pays the debts of another generally has no right to seek recovery from that person whose debts were paid, absent any agreement to the contrary. (*McMillan* v. *O'Brien* (1934) 219 Cal. 775, 779 [29 P.2d 183, 91 A.L.R. 383]; *United Pacific Ins. Co.* v. *Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 934-936 [266 Cal.Rptr. 231].)

[7]We do not address the issue of whether Smith may have a remedy against Maescher for reimbursement based on theories not presented in her pleadings in this case.

ambiguity in favor of Maescher. She asserts that Massachusetts law purportedly requires parents to support their college-age children, so that the language of the agreement should have been interpreted in that light with the result that Maescher was obligated to pay child support while Peter and Christopher were in college.

The critical language which we conclude is ambiguous on its face is as follows:

"D.   A child shall be entitled to support from the Husband until the first to occur of

"(1)   the death of such child;

"(2)   *the child attaining the age of eighteen and not attending high school or attending college*;

"(3)   the marriage of the child[.]" (Italics added.)

As the court found, the disjunctive and conjunctive words in section D(2) above, result in the ambiguity of that language on its face. There are two possible readings of the language. First, Maescher may have to pay child support until the child is 18 and is either (1) not attending high school or (2) attending college. Second, as Smith reads it, he may have to pay child support until either (1) the child is 18 and not attending high school or (2) the child is 18 and not attending college. The court concluded the first interpretation was the correct one after reviewing the declarations and documents submitted by the parties and after hearing oral arguments. Substantial evidence supports the court's finding on this extrinsic evidence. In particular, Maescher declared his payment of his sons' college expenses, consisting of room, board, tuition, and other expenses, was duplicative of any "support" necessary for them, and that he understood his obligations *to pay child support to Smith* ceased under the language of the separation agreement when they turned 18 and began college.

Further, in light of the scope of the college education provisions, we conclude that the more natural and appropriate meaning of this language is the interpretation the court made. Smith's suggested reading contorts the words used and also is contrary to what Maescher's obligations would otherwise be under applicable child support laws. Smith asserts that Massachusetts law requires parents to support their children when they are over age 18 (but under age 21) and attending college. (Mass. Gen. Law Ann., ch.

208, § 28.)[8] However, that statute merely authorizes a court to order such support, and it does not set forth any generally applicable obligation of parents to support their children in such circumstances and Smith fails to cite any Massachusetts case which so holds. In this case, the 1976 judgment of divorce incorporates the terms of the separation agreement and does not make any other provision for support. Accordingly, Smith's contention that this Massachusetts statute controls or significantly impacts interpretation of the language of the support agreement is meritless. Further, since the court's interpretation of the ambiguous language would not be affected whether Massachusetts law or California law was applied, we affirm the court's order as to child support during Peter and Christopher's college years even though the court may have harmlessly erred in applying California law.

## IV

Finally, we address Maescher's contention the court erred in awarding $1,000 in attorney fees to Smith. Since the court awarded such attorney fees in connection with Smith's efforts to obtain the $11,109 amount of college expenses she loaned to Peter, we must reverse such award in light of our holding the court erred in awarding these damages to Smith.

### DISPOSITION

The order denying child support payment arrearages to Smith during the years Peter and Christopher were in college is affirmed. The order awarding Smith $11,109 in damages for college expenses and $1,000 for attorney fees is reversed. Appellant to recover his costs for this appeal.

Kremer, P. J., and Todd, J., concurred.

---

[8]See footnote 5, *ante*, for relevant statutory language.