[713 NYS2d 148]

JENNIFER M. BLAIKIE, Appellant, v RICHARD MORTNER, Respondent.

First Department, August 17, 2000

APPEARANCES OF COUNSEL

*Richard Abrams* of counsel, New York City (*Arthur Morrison, Lawrence Morrison* and *Susan Cohen* on the brief; *Morrison Law Offices, P. C.,* attorneys), for appellant.

*Richard M. Mortner,* respondent *pro se.*

## OPINION OF THE COURT

Tom, J. P.

The issue before us is whether, under the circumstances of this case, the provisions of a separation agreement establishing child support exceeding the statutory child support guidelines, that is incorporated by reference but specifically not merged into the judgment of divorce, will govern postdivorce child support notwithstanding its upward departure from the statutory guidelines.

The parties were married in 1988. The marriage resulted in two children born in 1990 and 1992, respectively. In a separation agreement dated December 19, 1996, the parties agreed to a division of marital property, a waiver by each spouse of personal support from the other, and a series of arrangements regarding the children. Both parents agreed to share joint custody, and a comprehensive residential schedule was worked out. There is no indication that any violation of these terms has motivated the present litigation. More relevant to this litigation, though, was the child support formula jointly agreed to. Among other aspects of the complicated formula covering living and educational expenses, defendant husband agreed to pay $1,500 per child per month for two years, after which it would be scaled up or scaled down on an annual basis depending on his income, but never falling beneath an obligation of $1,000 per month per child. If his annual income exceeded $150,000, he would additionally pay 10% of the income that exceeded a threshold of $150,000 up to a maximum of $200,000, prorated on a monthly basis.

These monthly child support amounts exceeded the statutory child support obligations set forth in the Child Support Stan-

dards Act (CSSA). The agreement explains that the reason the husband, who himself is an attorney, assumed additional financial responsibility toward the children was in exchange for certain tax benefits, and assurances in regard to religious education conditioned on his compliance with the financial arrangements in the agreement (art IX [9] [a]). The agreement (art IX [11]) included a recitation of certain terms that have a bearing on this appeal. As noted below, Domestic Relations Law § 240 (1-b) (h) requires a recitation of certain acknowledgments when an agreement or stipulation deviates from the statutory child support guidelines. The agreement specified that both parties had been advised by their respective counsel of the provisions of Domestic Relations Law § 240 (1-b) and the child support guidelines promulgated pursuant thereto, that the agreement may alter what the parties' statutory obligations might have been, that they knowingly waived such rights under Domestic Relations Law § 240 (1-b) to whatever extent their contractual obligations diverged therefrom, and that there is a presumption that the basic child support obligation set forth in Domestic Relations Law § 240 (1-b) is "just and appropriate" (statutory term is "correct") and the parties then acknowledged what their statutory obligations would have been. The parties, specifically referencing Domestic Relations Law § 240 (1-b) (h) and Family Court Act § 413 (1) (h), also acknowledged their intention that their respective child support obligations be governed by the agreement. In the agreement, the parties also approximated, based on recent gross income, what the annual child support obligation would have been under Domestic Relations Law § 240 (1-b).

A judgment of divorce was entered June 26, 1997. The judgment made explicit that the separation agreement, a copy of which was attached to the judgment, "shall survive and not be merged in this judgment." In the introductory paragraph, the judgment indicated that its terms had been substantively approved by counsel for defendant husband. The judgment specifically referred to the separation agreement for custody, residence and visitation matters before turning to child support, which also directly referenced the agreed-upon provisions. The judgment indicated that the basic annual statutory child support obligation would have been $23,250 for both children, but that the parties had voluntarily agreed to the husband's enhanced responsibility as set forth in the separation agreement, which was generally tracked in the judgment. The judgment reflected that both parties had been advised of the provi-

sions of Domestic Relations Law § 240 (1-b), and stated that the child support provisions of Domestic Relations Law § 240 (1-b) presumptively resulted in the "correct" amount of child support to be awarded, after which that base aggregate amount of $23,250 was reiterated. The court then found that the child support amounts agreed to in the separation agreement conformed to, or exceeded, the statutory baseline. The defendant husband was then directed to pay as he had agreed.

In December 1997, the husband filed a petition for downward modification for child support in Family Court, arguing that neither the separation agreement nor the judgment of divorce complied with Family Court Act § 413 (1) (h) and as such were invalid. Testimony was taken and the matter was adjourned. The wife, in May 1998, subsequently moved by order to show cause in Supreme Court for a declaration that the agreement and judgment were valid. Supreme Court denied the wife's motion to consolidate the proceedings on the basis that Family Court had already heard testimony on the downward modification application and had held in abeyance the husband's challenge to the validity of the agreement and judgment. Family Court, in deference to the Supreme Court proceeding, dismissed its own proceeding by order dated September 16, 1998. Thereafter, by order to show cause dated October 16, 1998, the wife sought to hold the husband in contempt of the support judgment on the basis of purported arrears in the amount of $57,016.09. The husband cross-moved to declare the support provisions of the agreement and judgment invalid and for a new support order consistent with the statutory child support provisions.

By decision and order entered December 14, 1998, the court, while noting the husband's apparent "acquired income deficiency syndrome," adjusted his net income upward from that he alleged, and shifted some additional expenses to him. The court found that the present combined income of the parents for purposes of computing child support was $106,500, that the wife's annual resources were only $31,500, and that although the husband claimed only a $75,000 annual income, his earnings history reflected that he was actually capable of earning at least $90,000 per year. Nevertheless, after adjusting for some arrears, the court adjusted his monthly child support obligation downward from that initially fixed in the divorce judgment. In so doing, the court found the agreement to have been invalid as it failed to contain the recitations required by Domestic Relations Law § 240 (1-b) (h), although the decision

did not specify which recitals were missing or inadequate. The court also denied the wife's contempt motion. Since we find the agreement to have been valid, and since the husband has not cross-appealed, addressing those further findings need not detain us. Nevertheless, they do provide some insight into which parent should bear the greater share of the child support burden.

The Child Support Standards Act (L 1989, ch 567) is codified in Domestic Relations Law § 240 (1-b) and Family Court Act § 413 (1) (h). The CSSA "includes a numeric formula for calculating the award of child support, prescribing criteria as to combined parental income under $80,000 and criteria as to income above that amount" (*Matter of Cassano v Cassano*, 85 NY2d 649, 651). The legislation "had among its objectives the assurance that both parents would contribute to the support of the children" (*supra,* at 652) and that the children would not " 'unfairly bear the economic burden of parental separation' " (*supra,* at 652, quoting Governor's Program Bill Mem, Bill Jacket, L 1989, ch 567, at 1). Child support generally means the amount of money to be paid for the care, maintenance and education of unemancipated children (Domestic Relations Law § 240 [1-b] [b] [2]). The statute defines "basic" child support as the outcome of a mathematical formula set forth in guidelines, subject to increase on the basis of various factors, including health care, child care and educational expenses (Domestic Relations Law § 240 [1-b] [b] [1]), the latter commonly referred to as "add-on" expenses. The CSSA applies to "split custody" cases such as the present one (*Matter of Smith v Smith*, 197 AD2d 830). The legislation was enacted to impose some order on the awarding of child support and the apportionment of responsibilities between both parents (*see generally*, 1989 NY Legis Ann, at 248-250). In short, it establishes a baseline level of support for children, who are its intended beneficiaries (*Matter of Sievers v Estelle*, 211 AD2d 173), below which parents may not reduce their support obligations without complying with strict statutory criteria.

The CSSA countenances contractual arrangements for child support, as in stipulations or separation agreements (Domestic Relations Law § 240 [1-b] [h]), although it discourages deviations from the basic statutory child support amounts. In addressing only deviation in general, though, the CSSA is less than clear regarding deviations upward voluntarily agreed to by a particular parent, as in the present case, although there is some indication that here, too, the deviation must be set

forth and explained (*see, e.g., Farca v Farca*, 271 AD2d 482 [husband agreed to an amount in excess of statutory amount]; *compare, Klein v Klein*, 246 AD2d 195 [physician husband agreed to an amount of only 1% of weekly salary, leaving wife and child in penury]). The legislation also may be seen as a protection for the parent with lesser resources (*see, e.g., Klein v Klein, supra*), in that the baseline statutory obligation may shift, as appropriate, to the parent with the greater resources (Domestic Relations Law § 240 [1-b] [g]; *see, e.g., Matter of Cassano v Cassano, supra*). Defendant husband's purported plight does not fit that frame. Basically, the husband, an attorney, struck a bargain with which he is no longer satisfied, and he now parses the precise phrasing of some of the protective statutory acknowledgments as a means to invalidate an arrangement he freely and knowingly entered.

Domestic Relations Law § 240 (1-b) (h) sets forth the several acknowledgments that must be made by the parties when the CSSA guidelines are deviated from in an agreement or stipulation. This provision states that "[a] validly executed agreement * * * presented to the court for incorporation in an order or judgment shall include a provision stating that the parties have been advised of the provisions of this subdivision." This acknowledgment was set forth in the agreement as well as in the judgment.

Domestic Relations Law § 240 (1-b) (h) next requires an acknowledgment "that the basic child support obligation provided for therein would presumptively result in the *correct* amount of child support to be awarded" (italics added). This phrasing was included in the judgment, although, as noted above, the agreement utilized the term "just and appropriate" rather than "correct." The husband contends that this omission invalidates the agreement. Under these circumstances, though, the difference is de minimis. The statutory requirement was substantially satisfied in the underlying agreement. It bears repeating that the party asserting the claim that the wrong term was used is an attorney. Curiously, the husband does not argue that the term used in the agreement ("just and appropriate") is semantically different from that required in the statute ("correct"). He argues, rather, that the agreement completely omitted the statutory acknowledgment. This, of course, is inaccurate. In furtherance of his point he relies on case law where, in fact, there were complete omissions of the statutory catechisms. For instance, our ruling in *Klein v Klein (supra)* noted that the agreement in that case stated only in a conclu-

sory fashion that the agreement's child support provisions were agreed to be fair and that the wife waived her rights under the Child Support Standards Act. That phrasing, unlike the present case, was a complete omission of the required acknowledgment. As such, it reinforces rather than circumscribes our present analysis.

Domestic Relations Law § 240 (1-b) (h) also requires that if the agreement "deviates from the basic child support obligation, [it] must specify the amount that such basic child support obligation would have been and the reason * * * that [it] does not provide for payment of that amount." As noted above, the agreement explains that there was a tradeoff in which the husband received tax benefits in exchange for paying a higher monthly amount, and also received assurances regarding private religious education. Moreover, the parties did approximate in the agreement, as was reiterated in the judgment, what the approximate obligations would have been under the statute. The fact that this amount is not further broken down into dollars and cents does not persuade us, under the circumstances of this case, that the husband somehow was misled into assuming obligations greater than the statutory baseline. Certain of the husband's authorities are inapplicable. Since he does not challenge his child care or medical costs as such, the omission from the agreement of a calculation of such costs under the CSSA is not presently relevant (*cf.*, *Vernon v Vernon*, 239 AD2d 108).

We have considered defendant husband's remaining contentions and find no basis to alter our conclusions.

Since the agreement and the judgment substantially provided each acknowledgment and advisement in compliance with Domestic Relations Law § 240 (1-b) (h) and Family Court Act § 413 (1) (h), and there is no indication that the defendant, an attorney, in any manner misunderstood his statutory child support obligations or misapprehended the terms of either the agreement or the judgment that, with his consent, incorporated that agreement, he should be held to those terms.

Accordingly, the order of the Supreme Court, New York County (Walter Tolub, J.), entered December 14, 1998, which struck those paragraphs of the parties' separation agreement relating to child support and ordered the defendant husband to pay $1,562 per month in child support and $21,566 in arrears, should be reversed, on the law and the facts, without costs, the paragraphs of the separation agreement relating to child support reinstated and the matter remanded for a computation of the husband's arrears.

WALLACH, RUBIN, SAXE and BUCKLEY, JJ., concur.

Order, Supreme Court, New York County, entered December 14, 1998, reversed, on the law and the facts, without costs, the paragraphs of the separation agreement relating to the child support reinstated and the matter remanded for a computation of defendant's arrears.