893 A.2d 87

**Wheamei Jenq CHEN, Appellee**

v.

**Richard CHEN, Appellant**

**Theresa Chen, Intervenor.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 2004.

Decided March 20, 2006.

Charles A. Banta, Allentown, for Richard Chen.

Donald F. Spry, II, Bethlehem, for Wheami Jeng Chen.

CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## *OPINION*

Justice BAER.

We granted allowance of appeal to address a question of first impression before this Court concerning whether a child may bring suit or intervene in an action to enforce provisions of her parents' property settlement agreement. The Superior Court and the trial court below held that the child in this case could intervene in her mother's support action because the child was a third party intended beneficiary under her parents' property settlement agreement pursuant to the Restatement (Second) of Contracts § 302, as adopted by this Court in *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983). For the reasons that follow, we reverse.

Wheamei Chen ("Mother") and Richard Chen ("Father") were married on August 9, 1977. During the course of their six-year marriage, they had two children, Robert (Son), born in 1978, and Theresa (Daughter), born in 1982. At the time of the divorce in 1983, the parties entered into a property settlement agreement (the "Agreement"). The Agreement provided that Mother would have physical and legal custody of Daughter and that Father would have physical and legal custody of Son. The Agreement also contained the following provision:

9. Child Support

[Father] agrees and contracts to pay to [Mother] the sum of $25.00 per week as child support of the child, [Daughter] who will be in the custody of [Mother]. [Father] further agrees that upon obtaining regular employment or upon any increase in salary the aforementioned support award will be increased in accordance with the Northampton County Domestic Relations Guidelines. [Father] hereby waives, releases and renounces any and all claims to child support for [Son].

The Agreement was incorporated by reference but not merged into the divorce decree.

The parties do not contest that Father paid to Mother $25.00 weekly until Daughter's eighteenth birthday. Although Father obtained employment and increases in salary beginning in 1985, he never increased the amount of child support in accordance with the Domestic Relations Section Guidelines as specified in the Agreement. Furthermore, at no time did Mother seek an increase in the support amount.[1]

When Daughter turned eighteen in February 2000, the Domestic Relations Section of the Northampton County Court

---

1. Mother testified that she ended the relationship days after Daughter's birth due to Father's physical abuse of Mother. Moreover, she asserted that she did not seek an increase in the support payments upon Father's employment due to her fear of Father. As noted in the body of the opinion, however, Mother quickly sought to enforce the relevant provision in April 2000, upon notification that the support would terminate due to Daughter reaching majority.

of Common Pleas notified Mother that support would be terminated. On April 27, 2000, Mother filed a petition for special relief in the Northampton County Court of Common Pleas requesting enforcement of the property settlement agreement and a finding of contempt of court. Mother sought to enforce the Agreement's provision for increases in child support and to collect "total support/arrearages" based upon Husband's salary increases over the almost eighteen years the agreement had been in effect and Father had been paying $25.00 per week. Petition for Special Relief, April 27, 2000, at 3.

On May 25, 2000, shortly after turning eighteen, Daughter filed a petition to intervene as a party to her mother's action. She asserted that intervention under Pa.R.C.P. 2327(4)[2] was appropriate because she had a "legally enforceable interest" as a third party intended beneficiary under the Agreement. Daughter relied upon this Court's adoption in *Guy* of the Restatement (Second) of Contracts § 302 (Section 302),[3] which expanded our prior rule that restricted an intended beneficiary's standing to recover under a contract to those contracts

**2.** Rule 2327. Who May Intervene:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

\* \* \* \*

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.C.P. 2327.

**3.** As we set forth in *Guy*, Section 302 provides as follows:

Intended and Incidental beneficiaries

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties *and either*

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Guy*, 501 Pa. 47, 459 A.2d 744, 751 (Pa.1983) (emphasis in original).

manifesting an express intention by the contracting parties to benefit the third party. *See Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950). She contended that she satisfied the more liberal Section 302, which provides, in pertinent part, that "a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties" and "circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) of Contracts § 302(1)(b).[4]

On November 27, 2000, after conducting a hearing, the trial court found that the Daughter was an intended beneficiary to the Agreement and granted her petition to intervene. The court concluded that Daughter satisfied the *Guy* test because "recognition of [Daughter] as [an intended] beneficiary[5] to paragraph nine [of the Agreement] is appropriate to achieve what appears to be the parties' clear intention that the child support provision was to benefit [Daughter] throughout her minority." Tr. Ct. Order, Nov. 27, 2000, at 6.

After the trial court granted Daughter's intervention petition, Mother withdrew as party-petitioner, leaving Daughter and Father as party-opponents. A non-jury trial was held on January 28, 2002 on the merits of what was then Daughter's petition to enforce the Agreement. On June 28, 2002, the

4. Additionally, Daughter asserted that the six-year statute of limitations for breach of contract actions should not run from the time of Father's breach, but rather should run from the time she reached the age of majority in February 2000. *See* 42 Pa.C.S. § 5533(b). As we granted allocatur and decide this case on grounds unrelated to the statute of limitations, we need not comment regarding this issue.

5. The trial court uses the term "third party beneficiary" rather than "intended beneficiary." We observe that the courts below and the parties, as well as some of this Court's precedent on which we rely today, have used the term "third party beneficiary" in reference to those third parties that have standing to enforce an agreement. *See Guy,* 459 A.2d at 751. We recognize that that term is merely a short hand reference to intended third parties beneficiaries who have the ability to enforce the agreement. We prefer to use the designations of intended and incidental beneficiaries, provided in Section 302, and will utilize the specific terms rather than the generalized "third party beneficiary."

trial court entered an order in favor of Daughter and against Father. As the Agreement had been incorporated but not merged into the divorce decree, the trial court interpreted the document as an independent contract rather than a court order.[6] As addressed in the November 2000 order, the court reiterated its conclusion that Daughter satisfied the requirements of Section 302 as adopted in *Guy*. The court then concluded that the language of paragraph nine required Father affirmatively to increase his support payments after obtaining employment and raises, rather than waiting for Mother to request increases. Accordingly, the court found that Father had breached the Agreement.[7] The court calculated the amount of support allegedly due Mother from Father under the Domestic Relations Section Guidelines, subtracted the amount that had been paid by Father, and determined that Father owed $59,292.80.[8]

**6.** If an agreement is incorporated into a decree, it may be enforced as a contract pursuant to general contract principals. *See Nicholson v. Combs*, 550 Pa. 23, 703 A.2d 407, 417 (1997) (reviewing effect of merger and incorporation on ability to enforce or modify agreement as a contract or court order before and after enactment of 23 Pa.C.S. § 3105, which provides for enforcement and modification of agreement as a court order regardless of merger or incorporation status).

**7.** The court found Father's argument that Daughter had access to all the advantages her friends had enjoyed to be irrelevant to the issue of breach.

**8.** The court denied prejudgment interest based on Daughter's failure to present the necessary information. The record reveals that the trial judge granted reconsideration for the limited purpose of awarding prejudgment interest in July 2002. Resolution of this issue appears to be delayed pending the instant appeal.

Although our determination that the trial court erred in granting Daughter's petition to intervene and thus in awarding the allegedly due support resolves the inquiry before us, we nonetheless observe that the calculation of support based solely on the basic child support schedule, *see* Pa.R.C.P.1910.16–3, may have been erroneous. First, the calculated support does not account for any potential upward or downward deviations from the guidelines premised upon the parties' peculiar circumstances at each time point. *See* Pa.R.C.P.1910.16–5 (Support Guidelines. Deviation). Moreover, because it is hornbook law that Father cannot bargain away Son's generalized right to support from Mother, *see Nicholson*, 703 A.2d at 412, Father could have sought support from Mother for Son despite the terms of the Agreement. If Father had made this argument in response to Mother's petition, any

Father timely filed a notice of appeal with the Superior Court and complied with the trial court's order to file a statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). Husband challenged the trial court's decision to allow Daughter to intervene as an intended beneficiary.

In a published decision affirming the trial court,[9] the Superior Court observed that the specific question of whether a child can sue to enforce a support provision for her benefit based on her parents' property settlement agreement was an issue of first impression in the Commonwealth. *Chen v. Chen*, 840 A.2d 355, 359 (Pa.Super.2003). To determine whether Daughter could enforce the provision as an intended beneficiary, the court applied the two-part test set forth in *Guy*:

(1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

*Guy*, 459 A.2d at 751. The Superior Court appropriately observed that this Court in *Guy* found that the application of the second part of the test was restricted by the first part, which implicated standing. *See id.*

Applying the test to the facts, the Superior Court found that Daughter was an intended beneficiary because Mother intended to give Daughter the benefit of the support payments and because "[t]he primary intent of the parties in paragraph [nine] of the [Agreement] was to help [Daughter] by providing for her financial support." *Chen*, 840 A.2d at 358. The court then determined that there was "nothing to prevent [Daughter] from enforcing her right under the [Agreement] to an increased amount of support based on her father's increased

support obligation attributable to Mother would have altered the trial court's final calculations of the support due from Father to Mother.

9. Judge Ford Elliot penned the opinion joined by retired Justice Montemuro. Judge Klein concurred in result, stating that he would affirm on the basis on the trial court's opinion.

earning." *Id.* at 359.[10]  In doing so, the court rejected Father's argument that Daughter had no direct right to the payments, but only to her parents' support.  Father argued that Daughter received the benefit of the property agreement because she had led a "typical life."  The Superior Court found this argument irrelevant to the question of breach of contract as claimed by Daughter, as the intended beneficiary. Although not stated by the Superior Court, one can infer that it believed that where Mother could have sought recovery regardless of whether Child had enjoyed a "typical life," so too could Daughter as an intervenor acting in Mother's stead. The Superior Court then reviewed the merits of Daughter's breach of contract claim, and affirmed the trial court's award of $59,292.

■ Father filed a petition for allowance of appeal, which we granted, limited to the question of whether the courts below erred in determining that Daughter was an intended beneficiary to her parents' settlement agreement.  *Chen v. Chen*, 578 Pa. 433, 853 A.2d 1011 (2004).  In his brief, Father maintains that although they obviously intended Daughter to benefit from the support obligations, neither Father nor Mother intended that Daughter be a direct recipient of cash payments.  Consequently, Father contends that Daughter

**10.** The Superior Court noted that some of our sister states have allowed children to enforce their parents' separation agreements.  In the first of three cited cases, the court relied upon *Smith v. Smith*, 7 Ohio App.2d 4, 218 N.E.2d 473 (1964), for language supporting the conclusion that a child is a third party beneficiary who may enforce a parental separation agreement.  We note, however, that the Ohio court utilized the cited language only to support its conclusion that the trial court had continuing jurisdiction to modify the terms of a separation agreement and increase the support amount based in part on the third party beneficiary status and in part on the public policies related to a parent's obligation to support a child.  The Superior Court then cited without discussion *Worthington v. Worthington*, 207 Ark. 185, 179 S.W.2d 648, 650 (1944), for the proposition that a child may enforce a "contract for her benefit past her own majority;" however, that case does not suggest that Arkansas employs as stringent a test for intended beneficiaries as in Section 302 or *Spires*.  Finally, the court cited *Walsh v. Walsh*, 42 Cal.App.2d 282, 108 P.2d 760 (1940), for the proposition that a child may enforce his parents' property settlement agreement; however, that decision provides little analysis concerning that court's requirements for third parties seeking to enforce an agreement.

should have been denied intervention, because she was not an intended beneficiary of the payments. Father notes that the support guidelines, Pa.R.C.P.1910.16–1—1910.16–7, established by this Court pursuant to 23 Pa.C.S. § 4322, do not provide for direct payment of funds between a parent and child, but rather provide for payment from the obligor to the custodial parent or guardian. Father asserts that if this Court upholds Daughter's intervention based on the Agreement's provision for increased payments to be made to Mother, we would open the door to a child suing one or both of her parents by equating the right to be supported with the right to support payments. Because he concludes that neither parent intended Daughter to receive the payments dollar for dollar, we read his argument to assert that Daughter is an incidental rather than intended beneficiary under the test set forth in Section 302.[11]

Daughter counters that the trial court appropriately granted intervention to her as an intended beneficiary of her parents' agreement. In support, Daughter cites cases from other jurisdictions allowing children to enforce provisions of their parents' settlement agreements.[12]  Without directly ad-

11.  In his brief, Father argues that Daughter is not a third party beneficiary.  As Daughter was named in the contract, we find it indisputable that Daughter was a third party beneficiary; the question is whether she is an intended or incidental beneficiary.  We, however, interpret Father's argument to assert that Daughter should not be entitled to intervene as an intended beneficiary, when she is merely an incidental beneficiary under Section 302.

12.  Daughter cites several cases from our sister states in addition to those cited by the Superior Court, however, like the cases in note 10, *supra*, Daughter's cases are distinguishable from the case at bar.  Many of the cases cited by Daughter involve provisions that involve special circumstances or agreements to provide a benefit directly to the children such as trust funds, insurance, or college education.  *See Schwab v. Schwab*, No. FA81 0008990S, 1993 WL 592187, * 5 (Conn.Super.Ct. Dec. 29, 1993) (noting in an unpublished trial court decision that children may enforce separation agreements as further support for the court's holding that mother placed herself in a fiduciary relationship with children through creation of trust in a settlement agreement); *Farnsworth v. Farnsworth*, 657 So.2d 1273 (Fla.Dist.Ct.App.1995) (affirming in one paragraph decision the trial court's holding that obligation to pay college expenses for child was contractual rather than child support obligation that could be enforced by child rather than

dressing whether she meets the test under the first part of *Guy* regarding the appropriateness of granting standing to third parties, she contends that to deny her the opportunity to intervene as a third party would be to treat children differently than other parties who meet the *Guy* test. She maintains that as an intended beneficiary she is able to intervene to enforce the Agreement.[13] Daughter therefore requests that this Court affirm the holdings of the trial court and the Superior Court.

Initially, we observe, as did the Superior Court, that whether a child is an intended or incidental beneficiary to the provisions of her parents' separation agreement regarding child support is a question of first impression in Pennsylvania, and is a pure question of law. Accordingly, our standard of

mother); *Noble v. Fisher*, 126 Idaho 885, 894 P.2d 118, 123 (1995) (noting in *dictum* that children could bring action to enforce parent's contractual obligation to pay college tuition and book expenses); *Miller v. Miller*, 163 Ill.App.3d 602, 114 Ill.Dec. 682, 516 N.E.2d 837, 844–47 (1987) (holding that, as a direct third party beneficiary of parents' agreement, child had standing to seek a court order to enforce compliance with agreement to pay college expenses); *Kiltz v. Kiltz*, 708 N.E.2d 600, 602 (Ind.Ct.App.1999) (allowing children to enforce against father's estate father's agreement to maintain life insurance policies for their direct benefit); *Rogers v. Rogers*, 662 S.2d 1111, 1114 n. 1 (1995) (noting that both mother, as contracting party, and daughter, as direct beneficiary, could enforce father's agreement to pay support directly to child while child was in college); *Morelli v. Morelli*, 102 Nev. 326, 720 P.2d 704, 705–06 (1986) (recognizing general reluctance to allow children to enforce child support provisions but granting child standing due to special circumstance of death of custodial parent); *Curato v. Brain*, 715 A.2d 631, 635 (R.I.1998) (acknowledging that children had right to enforce provision in settlement agreement providing for children to receive interest in real property directly but determining interests were extinguished before they vested). The other cases cited also are not persuasive or directly relevant. *See In re Marriage of Bonifas*, 879 P.2d 478, 480 (Colo.Ct.App.1994) (involving agreement between biological parents and parties who agreed to raise and financially support child despite lack of official adoption proceedings); *Glenn v. Glenn*, 53 N.C.App. 515, 281 S.E.2d 83 (1981) (holding in one paragraph decision that children are proper parties in an action for an accounting for support payments).

13. There is no doubt Mother could have enforced her agreement with Father, subject to any relevant defenses including the statute of limitations and the considerations mentioned in note 8, *supra*. As Mother voluntarily withdrew as a party-plaintiff, her claims are not before us.

review is *de novo,* and our scope of review is plenary. *See Safe Harbor Water Power Corp. v. Fajt,* 583 Pa. 234, 876 A.2d 954, 966 n. 12 (2005).

As previously noted, intervention by a person not a party to an action is appropriate where the determination of the action "may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action." Pa.R.C.P. 2327(4). Daughter asserts that she has a "legally enforceable interest" as an intended beneficiary to her parents' separation agreement.

To determine whether Daughter has a legally enforceable interest, we must evaluate the Agreement pursuant to contract principles because property settlement agreements incorporated but not merged into divorce decrees are considered independent contracts, interpreted according to the law of contracts. *See Nicholson v. Combs,* 550 Pa. 23, 703 A.2d 407, 412 (1997). "A fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties." *Mace v. Atlantic Refining Mktg. Corp.,* 567 Pa. 71, 785 A.2d 491, 496 (2001). "It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." *Id.* (citations and internal quotation marks omitted).

Our review of the Agreement is controlled by this Court's precedent regarding standing of third party beneficiaries. Before 1983, we relied exclusively upon the test set forth in *Spires,* 364 Pa. 52, 70 A.2d 828, holding that a person has standing to enforce provisions of a contract as an intended beneficiary only if both contracting parties "have expressed an intention that the third party be a beneficiary and that intention must have affirmatively appeared in the contract itself." *Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147 (1992). As the relevant paragraph nine of the Agreement in the case at bar does not contain an express intention to designate Daughter

as an intended beneficiary of the child support payments to be paid to Mother, Daughter would fail to meet the *Spires* test.[14]

Daughter, however, argues that she meets the less strict test enunciated by this Court in *Guy*. As previously noted, in *Guy*, we adopted the two-part test set forth in the Restatement (Second) of Contracts § 302 for distinguishing intended beneficiaries from incidental beneficiaries, who cannot enforce the provisions of a contract. We concluded that the first part of the test sets forth a standing requirement that leaves "discretion with the court to determine whether recognition of [intended] beneficiary status would be appropriate," while the second part of the test defines "the two types of claimants who may be intended as third party beneficiaries." *Scarpitti*, 609 A.2d at 150.

We agree with the courts below and with Daughter that "circumstances indicate that [Mother] intend[ed] to give [Daughter] the benefit of the promised performance" as required by the second part of the *Guy* test, corresponding to Section 302(1)(b).[15] The question in this case concerns the standing portion of the test—whether recognition of a right in Daughter to seek performance of the provision to increase Father's weekly payments upon employment in accordance

**14.** 9. Child Support

[Father] agrees and contracts to pay to [Mother] the sum of $25.00 per week as child support of the child, [Daughter] who will be in the custody of [Mother]. [Father] further agrees that upon obtaining regular employment or upon any increase in salary the aforementioned support award will be increased in accordance with the Northampton County Domestic Relations Guidelines. [Father] hereby waives, releases and renounces any and all claims to child support for [Son].

**15.** The parties have not discussed whether Daughter would satisfy Section 302(1)(a), which requires that "performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary." As it informs our consideration of the standing portion of the *Guy* test which considers the appropriateness of a beneficiary's right to performance of the contract, we note that Daughter would not satisfy Section 302(1)(a) because Mother is not obligated to "pay money" to Daughter but rather is obligated to support Daughter. Moreover, Father, as promisor, is not paying Mother, as promisee, money to satisfy Mother's obligation to support daughter, but rather to satisfy his own obligation to support his child.

with the support guidelines is "appropriate to effectuate the intentions of the parties." *Guy*, 459 A.2d at 751.

This question implicates competing policy considerations. In favor of Daughter's position, the Legislature and the courts often have expressed the obligation of parents to support their children. *See, e.g.*, 23 Pa.C.S. § 4321(2) ("Parents are liable for the support of their children who are unemancipated and 18 years of age or younger."). Moreover, our Legislature has empowered this Court to set forth child support guidelines, in part to provide apportionment of the financial burdens of child support between the parents. *See* 23 Pa.C.S. § 4322; Pa. R.C.P.1910.16–1, Explanatory Comment (1998). This Court also has stressed the importance of protecting the best interests of children through child support in its willingness to abandon contract principles in the application of support agreements where the agreed upon support amount is insufficient. *See Nicholson*, 703 A.2d at 412 (noting that support provisions of separation agreements made prior to the enactment of 23 Pa.C.S. § 3105 (providing for modification of agreed upon levels of support upon a showing of changed circumstances) could be modified upward but could not be reduced).[16] The peculiar best interests of a child passing through life's changes are not implicated in the proceeding at bar, however, because Daughter is grown. While we recognize that a lump sum award would be helpful to Daughter as she starts her adult life, this case nonetheless does not involve the same concerns underlying our requirement that parents provide ongoing support for children during their minority.

This case also raises parents' fundamental right to direct the care, custody, and control of their children. *See Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). As a society, we allow parents to make decisions concerning how to allocate their incomes between savings and spending, between themselves and their children, and between individual children. While parents may include their children in discussions of expenditures, especially as children age, the final

---

**16.** *See also supra* note 8 (discussing parents inability to compromise children's right to support).

decision regarding the family's budget is for the parent or parents.

A parent's control of the family's finances applies both to intact and divorced families. In this Court's collective experience, we have never seen a parental agreement or a court order providing for a non-custodial parent to pay generalized child support directly to a minor child. It stretches credibility to believe that parents would entrust a twelve-year-old, to say nothing of a four-year-old, with control of support payments. Instead, agreements and orders direct the non-custodial parent to pay support monies to the custodial parent. The rationale behind this is obvious: parents are better equipped to utilize support payments and to decide what is best for their children than are children themselves. Moreover, as a society, we assume that custodial parents will use the support payments as part of the custodial family budget as the parent sees fit, whether it be through direct expenditures for the child's clothing or extracurricular activities or on provisions for the benefit of the whole family.[17] As a general rule, we do not put strings on the custodial parent's use of the money, confident that a parent's natural love will guide his or her motives as the family finances are apportioned among the many competing opportunities.

Along this same vein, notwithstanding the distinguishable cases cited by the Superior Court discussed at note 10, *supra*, many courts are reluctant, absent unusual circumstances such as the death of a parent, to allow children to enforce their parents' agreements where the custodial parent was a signatory to the agreement and the designated recipient of the payments. *See Forman v. Forman*, 17 N.Y.2d 274, 270 N.Y.S.2d 586, 217 N.E.2d 645 (1966) (noting policy reasons in favor of not allowing children to enforce periodic support provisions of their parents' separation agreements absent special circumstances, but allowing children to enforce provi-

17. As noted in regard to requests by a custodial parents to relocate, when custodial parents experience improvements in their general quality of life, "indirect benefits flow to the children with whom they reside." *See Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434, 439 (1990).

sions for their direct benefit such as the establishment of life insurance policies); *see also Morelli,* 720 P.2d at 705–06. This reluctance is often rooted in a desire "to promote familial harmony and foster the parent-child relationship," neither of which are served when a child litigates support obligations against a parent. *Drake v. Drake,* 89 A.D.2d 207, 455 N.Y.S.2d 420, 424 (N.Y.App.Div.1982) (holding that child did not have standing as third party beneficiary to enforce separation agreement relating to periodic support payments, but noting the children may enforce specific provisions made exclusively for their benefit such as promises to pay college tuition or in unusual situations such as the death or disability of the custodial parent).

We too refuse to enable a child to enforce her parents' settlement agreement where, as here, the agreement provides for support payments to the custodial parent. To construe the Agreement as providing Daughter a direct interest in the individual payments as opposed to support generally could open a Pandora's Box. Such a ruling could allow every child of divorced parents whose property agreement contained a provision for child support to bring suit against one or both parents, challenging the parents' compliance with the terms of the agreement. Indeed, such standing could allow a child as an intended beneficiary of the actual periodic support payments and not merely the beneficiary of support the right to demand from the payee-parent a dollar for dollar accounting of moneys paid for support pursuant to a separation agreement.

Accordingly, we conclude that strong public policy favors denying a child standing to seek the specific dollars one parent owes the other for the child's generalized support pursuant to a separation agreement, absent special circumstances such as a direct designation that a benefit be paid to the child or the custodial parent's inability to enforce the agreement due to death or disability. In doing so, we protect parents' rights to contract specifically for the direct payment of benefits to a child should they conclude that their circumstances warrant such a provision, but refuse to transform general language,

providing a child with support by way of payments to one parent, into a provision permitting a child to claim direct payment from the payor-parent or a specific accounting from the payee-parent.[18] While Mother and Father clearly intended to provide support for Daughter, they did not intend for her to receive payments directly. Instead, the Agreement left Mother to exercise her prerogative as a parent to direct the care, custody, and control of Daughter, and determine how to best use the support funds provided by Father. We will not rewrite the Agreement to provide otherwise. In doing so, we hold that Daughter is not an intended beneficiary under Section 302 and *Guy* because recognition of Daughter's right to performance is not "appropriate to effectuate the intention of the parties." [19]

**18.** This holding comports with the courts of our sister states who have concluded that children may enforce provisions of their parents' separation agreements that provide for benefits to flow directly to the children. *See supra* note 12 (collecting cases providing for children's enforcement of direct benefits in separation agreements); *see also In re Marriage of Smith and Maescher*, 21 Cal.App.4th 100, 26 Cal.Rptr.2d 133, 136 (1993) (regarding payment of college expenses); *Mitchell v. Combank/Winter Park*, 429 So.2d 1319 (Fla.Ct.App.1983) (same); *Wolfinger v. Ocke*, 72 Ohio App.3d 193, 594 N.E.2d 139 (1991) (same).

**19.** Although the parties did not address it in their brief likely due to their determination of its inapplicability, some may find support for Daughter's enforcement action in an illustration provided in the comments to the Restatement (Second) of Contracts Section 302. Comment (b). Illustration (2) provides:

> B promises A to furnish support for A's minor child C, whom A is bound by law to support. C is an intended beneficiary under Subsection (1)(a).

At first blush, this illustration would appear to favor Daughter's claims. However, the illustration is inapposite. First, the example illustrates cases covered by subsection (1)(a) relating to creditor beneficiaries rather than subsection (a)(2) regarding donee beneficiaries. The courts below and Daughter have asserted that Daughter meets subsection (1)(b) due to Mother's intention to give Daughter the benefit of the promise. As discussed, *supra* note 15, it does not appear that Daughter would be a creditor beneficiary because Father's promise to pay Mother did not satisfy an obligation of Mother "to pay money" to Daughter but rather satisfied Father's obligation to support Daughter. Additionally, a close reading of the illustration indicates that while A is a parent, it does not appear that B is also a parent, and thus the illustration does not necessarily apply to separation agreements, which as previously noted involve policy considerations in conflict with granting children

Based on the foregoing, the courts below erred in concluding that Daughter had a legally enforceable interest to justify intervention pursuant to Pa.R.C.P. § 2327. Accordingly, we reverse.

Justice NEWMAN joins the majority opinion.

Former Justice NIGRO did not participate in the decision of this case.

Chief Justice CAPPY files a concurring opinion.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion in which Justice EAKIN joins.

Chief Justice CAPPY, Concurring.

I join the Majority Opinion insomuch as it resolves this matter on principles of contract law. I, however, respectfully disassociate myself from the Majority's reliance on principles outside of contract law and its consideration of issues outside the scope of the issue to which this Court limited its review. *See, e.g.,* Maj. Op. at 586 Pa. 308–11, 893 A.2d at 94–95 (discussing competing policy considerations); *id.* at 302–03, n. 8, 893 A.2d at 90, n. 8 (commenting on the trial court's calculation of child support).

Justice CASTILLE, Concurring.

I concur in the result since I believe that Theresa Chen ("Daughter") was not an intended beneficiary of her parents' property settlement agreement. I am in agreement with Chief Justice Cappy's Concurring Opinion that the Majority unnecessarily relies on principles outside of contract law in disposing of the issue presented, *see* Maj. op. at 586 Pa. 308–11, 893 A.2d at 94–95, and considers extraneous issues unrelated to the limited issue upon which this Court granted review, *see id.* at 302–03 n. 8, 893 A.2d at 90 n. 8; *id.* at 308 n. 15, 893

the status of intended third party beneficiaries absent clear direction by the parties in the agreement or other special circumstances.

A.2d at 94 n. 15; *id.* at 312–13 n. 19, 893 A.2d at 96 n. 19. In my opinion, the issue presented in this case is easily resolved by a straightforward application of the two-part test presented in the Restatement (Second) of Contracts § 302, as adopted by this Court in *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983).

Like the Majority, I agree that Daughter satisfies the second prong of the § 302 test because Wheamei Jenq Chen ("Mother"), as promisee, intended to give Daughter the benefit of the promised performance, *i.e.,* the $25.00 weekly child support payments from Richard Chen ("Father"). *See* Restatement (Second) of Contracts § 302(1)(b). I also agree that the central issue in this case concerns the first prong of the § 302 test—whether recognition of a right to performance in Daughter is appropriate to effectuate the intention of the parties. *See id.* § 302(1). In actually resolving this issue, however, the Majority, rather than applying this prong to the underlying facts, needlessly considers competing policy considerations in concluding that, "strong public policy favors denying a child standing to seek the specific dollars one parent owes the other for the child's generalized support pursuant to a separation agreement, absent special circumstances. . . ." Maj. op. at 586 Pa. 309–11, 893 A.2d at 95.

I believe that, based on the unambiguous words of the property settlement agreement, Mother and Father clearly intended for Mother to receive the child support payments for the benefit of Daughter, not for Daughter to be the direct recipient of the payments. Accordingly, Daughter is not an intended beneficiary under § 302; rather, she is an incidental beneficiary. That is enough to decide this case and require reversal.

Justice SAYLOR, Concurring.

Because the contract at issue is a child support agreement, it seems evident to me that Daughter was the intended beneficiary, at least during her minority. *See generally Holmes v. Wooley,* 792 A.2d 1018, 1021 (Del.Super.2001) (noting that, under Delaware law, a child support obligee has a

duty to use child support monies on behalf of the children involved and that the children are thus "the intended beneficiaries of such funds" with "an equitable interest in them"); *Murray v. Murray,* 128 Ohio App.3d 662, 716 N.E.2d 288, 292 (1999) (requiring an expansive definition of income for child support calculation purposes, so as to "ensure that the best interests of the children, the intended beneficiaries of child support awards, are protected" (internal quotation marks omitted)); *Blaikie v. Mortner,* 274 A.D.2d 95, 713 N.Y.S.2d 148 (N.Y.App.Div.2000) (detailing that New York's domestic relations code "establishes a baseline level of support for children, who are its intended beneficiaries"); *Hurlbut v. Scarbrough,* 957 P.2d 839, 842 (Wyo.1998) ("Unpaid child support is not an asset of the parent but is the children's money which the parent administers in trust for the children's benefit."); *accord In re Poffenbarger,* 281 B.R. 379, 388–89 (Bkrtcy.S.D.Ala.2002). Therefore, I am not as certain as the majority that it is appropriate to rely exclusively upon ordinary contract principles to resolve the specific question of whether Daughter had standing to sue Father to enforce the contract's terms. It seems to me that that essential question amounts to one of public policy resolvable even in the absence of the overlay provided by Section 302 of the Restatement of Contracts. Because I agree that, as a policy matter, minor children should not be accorded standing to initiate such legal actions absent express statutory authority, *see* Majority Opinion at 586 Pa. 308–13, 893 A.2d at 94–96, I join the majority opinion subject only to the above thoughts.

Justice EAKIN joins this concurring opinion.