Filed 8/27/13  Raisch v. Raisch CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DOUGLAS E. RAISCH, | H037520 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. FL098687) |
| v. | |
| LAUREN K. RAISCH, | |
| Defendant and Respondent. | |

Appellant Douglas Raisch and respondent Lauren Raisch are the parents of four children.  They separated in 2000 and thereafter divorced.  A 2006 stipulated judgment provided that Douglas was to pay specific amounts of child support and spousal support, and that he was to share college expenses equally with Lauren.  Douglas ceased paying spousal and child support in early 2010, and he filed a motion in April 2010 seeking a modification of child support to zero.  In December 2010, he ceased paying for college expenses for the two children who were then in college.  In April 2011, Lauren brought a motion to enforce the 2006 judgment and sought to recover attorney's fees.

Both motions were heard in June 2011 and decided in August 2011.  The court granted Douglas's motion to modify child support and reduced the amount of child support, but it declined to make the modification retroactive to the April 2010 filing of the motion.  The court ordered Douglas to reimburse Lauren for college expenses that he

was required to share with her under the 2006 judgment, and it ordered Douglas to pay $75,000 of Lauren's attorney's fees under Family Code section 2030. Douglas claims that the court abused its discretion in refusing to make the child support modification retroactive, requiring him to reimburse Lauren for college expenses, and awarding Lauren attorney's fees. We reject his contentions and affirm the trial court's order.

## I. Background

Douglas and Lauren separated in 2000 after a 16-year marriage that produced four children. In 2005, Douglas and Lauren agreed to a stipulated order setting the amount of child support and spousal support and providing for annual adjustments based on the consumer price index (CPI). Spousal support was set to terminate on December 31, 2010. The 2005 order also provided that Douglas and Lauren would equally share college expenses for the four children up to a total of $480,000 per parent. Douglas was also obligated under the 2005 stipulation to pay "one half of private school tuition for the children . . . ." The 2005 stipulated order was incorporated into a 2006 judgment.[1] Lauren had primary custody of the children.

In February 2010, when his child support obligation was over $8,000 per month and his spousal support obligation was just under $20,000 per month, Douglas unilaterally ceased paying both child and spousal support.[2] On April 1, 2010, Douglas

---

[1] A 2003 stipulated order set the amount of child support differently, but it also required Douglas to equally share with Lauren the cost of college education for each of their four children up to a total of $480,000 from each parent. It was stipulated in the 2003 order that Douglas's gross monthly income was $76,500. The 2003 order required Douglas and Lauren to "split equally private schooling costs . . . ." The 2005 order superseded the 2003 order.

[2] At the time he filed his April 2010 motion, Douglas's child support obligation was $8,276.75 per month. It continued at that level through August 2010 and thereafter increased, due to the annual adjustment, to $8,279.45 per month.

2

filed a motion for modification of his child support obligation. At that point, two of the children were still minors, and the other two children were in college. Douglas claimed in his April 2010 income and expense declaration that his monthly expenses were over $34,000 per month, including $19,668 per month in spousal support. He declared that his business had "ceased all operations in November [2009] and is insolvent." Neither the business nor Douglas had filed for bankruptcy. Douglas declared that he had "no current income" other than unemployment benefits of $920 every two weeks. He claimed that his gross pay for the year 2009 was less than $20,000. Douglas asserted that he "has no current prospects for being obligated to advance further educational funds" for his children's college expenses.

Douglas's motion claimed he had "an inability to pay any child support" and "request[ed] a current modification, effective as of this filing." Douglas asked that child support "be reduced to zero" and asserted that "orders for private schooling and for college funding need to be eliminated . . . ." (Underscore omitted.) He did not obtain a hearing date for his motion. Despite repeated requests by Lauren and her attorney after the filing of the motion, Douglas refused to provide any documentation to support his motion. In December 2010, Douglas informed the two children who were in college that he would no longer be contributing toward their college expenses.

In April 2011, Lauren filed a motion to enforce the 2006 judgment. She sought unpaid child support and spousal support, and she sought reimbursement from Douglas "for his half of payments made by Respondent toward the children's college expenses . . . ." In addition, she sought reimbursement for Douglas's half of the minor children's private school expenses. Lauren further asked the court to award her $250,000 in attorney's fees under Family Code section 2030 and sanctions of $150,000. On April 29, 2011, Douglas and Lauren agreed to a stipulated order resolving the issue of spousal support, and Douglas paid Lauren $207,500 in spousal support arrears.

3

In May 2011, Douglas filed another income and expense declaration in which he claimed that his monthly expenses were $7,684, and that $5,784 of this amount was "paid by others" (his current wife Lisa). He also reported that the minor children spent 95 percent of their time with Lauren and 5 percent of their time with him. On May 11, 2011, Douglas filed an ex parte motion seeking, for the first time since he had filed his April 2010 motion, to set it for hearing.[3]

Lauren opposed Douglas's motion to modify child support. She asserted that his child support obligation should not be modified at all because he had plenty of money available to him, including money from tax refunds he had received, to provide him with the ability to continue to pay the child support due under the 2006 judgment. Alternatively, she urged that there was good cause to deny retroactivity of any modification.

Both motions were heard in June 2011 and resolved in a lengthy written order in August 2011.[4] The court granted Douglas's motion to modify child support, modified his child support obligation to reduce it to $1,352 per month, and made the modification effective on July 1, 2011.[5] The court found that Douglas had failed to disclose in his

---

[3] Douglas claims on appeal that he had "an inability to get a hearing date sooner than June 22, 2011." Not so. The record reflects that Douglas obtained a hearing date as soon as he requested one.

[4] At the June 2011 hearing, Lauren relied on *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546 (*Leonard*) and argued that any modification should not be retroactive because Douglas had had the funds to pay the previously set child support amount during the potential retroactive period, and he was not unemployed during that period. Douglas insisted that the funds he had available during that period were irrelevant because his tax refunds were "not income" for child support purposes.

[5] The court found that Douglas's income going forward (from July 1, 2011) was $5,000 per month. The court did not impute any income to Douglas. The court found that Douglas's income tax refunds were *not* "income available for support on an ongoing basis" because there was no evidence that "these will be recurring in the future." Hence, (continued)

4

income and expense declaration or otherwise the funds that he had received from income tax refunds and other sources between the filing of his April 2010 motion and July 1, 2011.  Due to "the substantial non taxable income received by [Douglas] during the period of time for which a modification is sought," the court decided that the modification should not be retroactive.  The court granted Lauren's request for reimbursement of college expenses.  It also ordered Douglas to pay $75,000 toward Lauren's attorney's fees and costs under Family Code section 2030.  Douglas timely filed a notice of appeal from the court's August 2011 order.

## II.  Discussion

### A.  Denial of Retroactivity

Douglas does not challenge the court's modification of his child support obligation, but he argues that the trial court abused its discretion in refusing to make the modification order retroactive.

The general rule is that it is a discretionary decision for the trial court whether to make retroactive a child support modification order.  (Fam. Code, § 3653, subd. (a).)  Where the child support modification order "is entered due to the unemployment of . . . the support obligor," it "shall be" retroactive "unless the court finds good cause not to make the order retroactive and states its reasons on the record."  (Fam. Code, § 3653, subd. (b).)

Douglas claims that the trial court's modification order was "entered due to [his] unemployment" and therefore was required to be retroactive in the absence of a good cause finding with reasons stated on the record.  Even if we assume that Family Code section 3653, subdivision (b) applies rather than subdivision (a), we can find no abuse of

it did not use the income tax refunds in calculating child support.  The court found Lauren's income to be zero.

5

discretion in the trial court's order, which was supported by a good cause finding with reasons stated in a written order.[6]

"[A] trial court's decision whether to make an order for child support retroactive is reviewed under an abuse of discretion standard." (*Leonard*, *supra*, 119 Cal.App.4th at p. 555.)  Douglas acknowledges that *Leonard* is the leading case delineating the "good cause" requirement in Family Code section 3653, subdivision (b).  " '[G]ood cause' under section 3653(b) requires the court to make a good faith finding that nonretroactivity is justified by ' "real circumstances, substantial reasons, [and] objective conditions." ' [Citation.]  A determination under section 3653(b) that there is good cause to make nonretroactive the modification or termination of a prior child support order must give due consideration to the above stated statutory principles concerning child support." (*Leonard*, at p. 559.)  These statutory principles require a parent to make the support of the children his or her first priority and to support the children to the best of his or her ability.  (*Leonard*, at p. 556.)  "[W]hether there is good cause to deny retroactivity under section 3653(b) requires an evaluation of the children's needs at the time.  Those needs of the children must be examined in the context of the then-existing ability of the parents— both custodial and noncustodial—to provide child support."  (*Leonard*, at p. 560.)

"[D]etermining good cause under section 3653(b) requires a balancing of interests, with the primary focus being to ensure, if possible, that ' "children actually receive fair, timely, and *sufficient* support." [Citation.]' [Citation.]  [¶]  This balancing includes an evaluation of the needs of the minor children and the potential hardship resulting to them

---

[6]     While Douglas's April 2010 motion asserted that he was unemployed, the trial court's August 2011 order was, at least arguably, not "*entered* due to" Douglas's unemployment because the court found that Douglas was employed at the time that the court entered its order with an income from employment of $5,000 per month.  (Italics added.)

from the retroactive reduction or termination of support. Since each parent is obligated to provide support according to his or her ability (§ 4053, subd. (d)), the court must examine the then-existing financial circumstances of both parents. The court balances the needs of the children against the interests of the supporting parent not to be faced with an unjust and unreasonable financial burden resulting from a nonretroactive order. This latter inquiry examines the supporting parent's then-existing financial resources and ability to pay for the support of the children during the period of potential retroactivity being considered. Since the needs of the children are of paramount concern, where retroactivity would result in demonstrable hardship to them, good cause may exist to deny a retroactive support reduction or termination when the supporting parent has the ability to bear that financial burden." (*Leonard*, *supra*, 119 Cal.App.4th at pp. 560-561.)

Under *Leonard*, the keys to a decision on retroactivity are the "real circumstances" affecting the children's needs and the parents' financial circumstances during the potential period of retroactivity. Although Douglas claims that he "was in no better financial position than Lauren," the record indicates the opposite. Throughout the potential retroactivity period, Lauren, as the primary caretaker of the children, incurred expenses of more than $40,000 per month despite her lack of income, minimal liquid assets, and significant debts. Her financial circumstances placed her in a precarious position to bear the full weight of the children's expenses during this period of more than a year. Since Douglas's discontinuation of support was abrupt, it did not allow for a gradual period of adjustment to a lower level of expenses, but instead required Lauren to pay ongoing expenses to which she and the children were already committed.

In contrast, Douglas, who spent little time caring for the children during the potential period of retroactivity, was not burdened with their financial support. Although he claimed no income *from employment* during the period from April 2010 to June 2011, he received unemployment benefits and a total of nearly $1 million in other funds in 2010, which included $650,000 in income tax refunds that he received in November

7

2010. Douglas acquired no debts or delinquencies during this period. Instead of using any of these very substantial funds to pay his child support obligation, which amounted to between $110,000 and $120,000 during the potential retroactive period and was statutorily required to be his first priority, Douglas paid $80,000 to $100,000 to his attorneys, put a $140,000 down payment on a new home without selling his existing home (which was on the market for $1.5 million), and paid $7,600 per year to send his daughter with his current wife to private school.

Despite Douglas's argument to the contrary, the good cause inquiry under *Leonard* does not require a parent's financial resources to be viewed through a restrictive filter that limits the court's consideration of a parent's "financial resources" to "income" as it is defined in Family Code sections 4055 and 4058. As this court stressed in *Leonard*, the relevant inquiry depends on "'real circumstances, substantial reasons, [and] objective conditions'" bearing on the children's needs and the parents "financial circumstances" and "financial resources." Family Code sections 4055 and 4058 are concerned with identifying the types of income that are considered in calculating the amount of child support. (Fam. Code, § 4055 [uniform guidelines for calculating child support], Fam. Code, § 4058 [income to use in calculating child support].) Family Code section 3653, which governs the retroactivity of a modification order, makes no mention of Family Code sections 4055 and 4058 or of their definitions of "income." In making the good cause decision, the trial court is not required to calculate a child support amount for the potential retroactive period, as the child support amount for that period will either be the previously ordered amount, if the new order is not retroactive, or the new amount if the new order is retroactive. Since no calculation of a separate child support amount is necessary, the parents' "income" for child support purposes is not the relevant measure of the parents' financial resources for purposes of determining whether a modification order should be retroactive.

8

Douglas asserts otherwise, but the record is clear that the trial court did not use Douglas's income tax refunds to calculate child support. In its August 2011 order, the trial court explicitly found that Douglas's income tax refunds were *not* "income available for support on an ongoing basis" because there was no evidence that "these will be recurring in the future." Therefore, the court did not consider those refunds in calculating Douglas's income for child support purposes going forward. It is true that the trial court also made a finding in its August 2011 order that the funds that Douglas received between April 2010 and June 2011 (the potential retroactive period), including income tax refunds, were "income available for support" within the meaning of Family Code section 4058, but this finding had no materiality. Douglas claims that this finding reflects that the trial court improperly used his receipt of income tax refunds. It did not. The only improper impact that this finding could have had would have been if the income tax refunds were utilized to calculate child support. They were not. The trial court's denial of retroactivity was not required to be based on Douglas's "income available for support," and the reason provided by the court for denying retroactivity did not hinge on this characterization of the nature of Douglas's income. The trial court's denial of retroactivity was premised on Douglas's receipt of "substantial non taxable income" between the filing of his motion and the hearing of his motion. Whether this income was "income available for support" or not, it still provided Douglas with the financial resources necessary to pay his child support obligation during the potential retroactive period.

The trial court's "balancing of the hardships" under *Leonard* led to a decision that was well within the bounds of its discretion. Douglas had nearly $1 million at his disposal in the relevant period and chose to use none of it to support his children though just $110,000 to $120,000 would have satisfied their needs. Instead, he paid lawyers $80,000 to $100,000, put $140,000 into a new home without disposing of his existing home, and continued to send his daughter with his new wife to private school. Clearly,

9

Douglas had the financial resources available to pay the child support that his children needed, but he instead chose to devote his considerable financial resources to other things and left Lauren, with no income, little in liquid assets, and substantial debt, to bear all of the children's considerable expenses. Douglas never contended that the children did not need these funds during the potential retroactive period to pay for their schooling, food, shelter, and activities. On this record, we can find no abuse of discretion in the trial court's conclusion that there was good cause to deny retroactivity.

Douglas also contends that the trial court failed to state reasons on the record. We disagree. Although the trial court could have provided more explanation of its reasoning, it expressly identified as a reason underlying its good cause finding the fact that Douglas had received "substantial" funds during the potential retroactive period. This finding established that Douglas's financial resources gave him the ability to pay the child support due during that period and that he simply chose not to do so. The court's reasoning supported a finding of good cause to deny retroactivity. We uphold the trial court's denial of retroactivity.

## B. Reimbursement of College Expenses

Douglas claims that the trial court erred in ordering him to reimburse Lauren for his share of their children's college expenses as required by the 2006 judgment.[7]

### 1. Background

The 2005 stipulation, which was incorporated into the 2006 judgment, provided that "[e]ach party shall be responsible for one half of the cost of tuition, board, books and reasonable living expenses for a college or vocational program for each child" with the

---

[7] Douglas does not challenge the court's order that he bear his share of the children's *future* college expenses.

10

limitation that college expenses "shall in no event be higher than a total of $480,000 for the four children per party."[8] The stipulation provided that "Judge Roggia [(the trial court)] has jurisdiction to resolve any disputes related to the choice of college or program *and the expenses each parent may be held responsible for*." (Italics added.)

Beginning in December 2010, Douglas ceased paying any college expenses, and Lauren bore the full amount of the college expenses for the two children who were then in college. She sought reimbursement of the expenses that she had paid instead of Douglas.[9] Douglas asked the court to eliminate his obligation to pay college expenses.

The court rejected Douglas's request on the ground that this was "a contractual obligation in the stipulation agreement such that the Court is without jurisdiction at this time to modify the same." The court granted Lauren's request for reimbursement of college expenses and confirmed that Douglas "is obligated to fund his half of the college expenses pursuant to the Order up to the cap of $480,000."

## 2. Analysis

Douglas relies on one case and a comment to a section of the Restatement Second of Contracts to support his claim that reimbursement could not be ordered. Neither of them supports his claim.

The case, *In re Marriage of Smith & Maescher* (1993) 21 Cal.App.4th 100 (*Smith*), involved a Massachusetts dissolution judgment that incorporated a marital settlement agreement (MSA) requiring the husband to pay the colleges expenses for the children. (*Smith*, at pp. 103-104.) The MSA stated: "The Husband agrees, provided that

---

[8] Douglas and Lauren were each obligated under the 2005 stipulation to contribute money to college accounts for each child, but their financial obligations for college expenses were not limited to the amounts in these accounts.

[9] Lauren also sought an order that Douglas fund accounts to cover college expenses for the children.

11

he is financially capable to do so, to provide for the undergraduate college education of both children at an accredited institution of higher learning." (*Smith*, at p. 104.) After paying for the first three years of college for one child, the husband stopped paying the child's college expenses. The wife then paid the child's college expenses for a fourth year. (*Ibid.*) The child failed to complete college, but the husband then gave the child $10,000 and suggested that the child use it to reimburse the wife. The wife refused to accept the money from the child. (*Smith*, at pp. 104-105.) The wife filed a civil action in California to recover as damages the college expenses of $11,109 she had expended for the child's fourth year of college. (*Smith*, at p. 105.) The issue in *Smith* was whether the wife could "maintain a damage action" for breach of a third-party beneficiary contract. (*Ibid.*) The Court of Appeal concluded that the wife had a "right to enforce" the husband's promise, but she did not have a right to bring an action for damages. (*Smith*, at p. 106.) The court explicitly did not address "the issue of whether [the wife] may have a remedy against [the husband] for reimbursement . . . ." (*Smith*, at p. 108, fn. 7.)

*Smith* has no application here. Unlike the wife in *Smith*, Lauren did not bring an *action for damages* against Douglas. Lauren asked the court that had entered the 2006 judgment to enforce it. This issue was not addressed in *Smith* since the court expressly stated that it was not considering whether the wife had a remedy for reimbursement. "A judgment or order made or entered pursuant to [the Family Code] *may be enforced* by the court by execution, the appointment of a receiver, or contempt, or *by any other order as the court in its discretion determines from time to time to be necessary*." (Fam. Code, § 290, italics added.) Thus, the trial court had discretion to enforce the 2006 judgment by ordering Douglas to reimburse Lauren.

The Restatement Second of Contracts comment upon which Douglas relies is similarly unhelpful. Restatement Second of Contracts, section 307 states: "**Where specific performance is otherwise an appropriate remedy, either the promisee or the beneficiary may maintain a suit for specific enforcement of a duty owed to an**

**intended beneficiary.**" Comment d, the one to which Douglas refers, reads: "*d. Gift promise.* Where the promisee intends to make a gift of the promised performance to the beneficiary, the beneficiary ordinarily has an economic interest in the performance but the promisee does not. Thus the promisee may suffer no damages as the result of breach by the promisor. In such cases the promisee's remedy in damages is not an adequate remedy within the rules stated in §§ 359 and 360, and specific performance may be appropriate. See Illustration 1 to § 305. The court may of course so fashion its decree as to protect the interests of the promisee and beneficiary without unnecessary injury to the promisor or innocent third persons. See § 358." (Rest.2d Contracts, § 307, com. d.) As was the case with *Smith*, this comment concerns the propriety of an action for damages. Lauren's request that the court enforce the 2006 judgment was not an action for damages.

Lauren sought enforcement of the 2006 judgment under Family Code section 290. The court ordered Douglas to comply with the 2006 judgment by reimbursing Lauren for college expenses that he was obligated to pay but had not paid. Douglas has failed to demonstrate that the court lacked the power to require him to comply with the 2006 judgment by reimbursing Lauren.

### C. Attorney's Fees

Douglas contends that the trial court abused its discretion in awarding Lauren $75,000 in attorney's fees under Family Code section 2030. He claims that the parties' relative circumstances did not justify such an award.

The court found that Lauren had incurred more than $350,000 in attorney's fees and costs. The court found that Douglas had had available to him substantial funds that he could have used to pay his child support and spousal support obligations. Instead, he unilaterally stopped paying these obligations and "conceal[ed]" these funds, thereby prolonging and complicating the litigation. "Based on the entire circumstances of the case and the respective financial positions of the parties," the court ordered Douglas to

13

pay $75,000 to Lauren as his contribution toward her attorney's fees and costs under Family Code section 2030.

Family Code section 2030 authorizes a court to make an award of attorney's fees and costs where there is a "disparity" in "ability to pay" for legal representation. Douglas had received nearly $1 million in 2010 but had triggered this litigation by refusing to pay child support, spousal support, or college expenses that he was obligated to pay under the 2006 judgment. Yet he had managed to pay his own attorney's fees. At the time of the June 2011 hearing, Douglas was employed, and the court found that his income was $5,000 per month.[10] In contrast, Lauren had no income at all and significant debts, and she had had to bear all of the children's expenses throughout the litigation. She had not been employed since 1989, and she had not been able to obtain "meaningful employment" due to her responsibilities as the minor children's primary caretaker. The trial court could have reasonably concluded that there was a significant financial disparity between the parties. Douglas had received large amounts of funds in 2010 and had a regular income at the time of the hearing, while Lauren had no income at all. The court did not abuse its discretion in requiring Douglas to bear a small portion of Lauren's burdensome attorney's fees and costs for litigation that Douglas triggered by failing to comply with the 2006 judgment.

---

[10] At trial, Douglas testified that he anticipated an income of $4,000 per month going forward.

14

### III. Disposition

The trial court's order is affirmed.

 

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Márquez, J.